GEORGE ROBERT BELL, PETITIONER v. EDWARD L. POWELL, COMMISSIONER OF MOTOR VEHICLES OF NORTH CAROLINA AND THE DEPARTMENT OF MOTOR VEHICLES, RESPONDENT

No. 786SC712

(Filed 1 May 1979)

Automobiles § 2.4— willful refusal to take breathalyzer test

Petitioner willfully refused to submit to a breathalyzer test where he submitted to the test initially but failed to give a sufficient breath sample to get an accurate reading; petitioner was given two additional opportunities to complete the test but refused to give another breath sample; the breathalyzer operator, after having waited more than thirty minutes after he advised petitioner of his rights, disassembled the breathalyzer machine in petitioner's presence; and petitioner then requested to submit to the test after the machine was disassembled.

APPEAL by petitioner from *Rouse, Judge.* Judgment entered 8 May 1977 in Superior Court, HERTFORD County. Heard in the Court of Appeals 25 April 1979.

Petitioner was arrested on 6 September 1976 for operating a motor vehicle on Highway 461 in Hertford County, while under the influence of intoxicating liquor. Later respondent received an order of revocation of his driver's license for failure to take the breathalyzer test; he requested and was granted an ad-ministrative review by a hearing officer of the Division of Motor Vehicles; this hearing officer entered an order affirming the ac-tion of the Division of Motor Vehicles in ordering the petitioner's driver's license revoked for six months. Petitioner sought a

review by the Superior Court; after hearing the evidence, Judge Rouse affirmed the revocation order complained of by petitioner and dissolved all restraining or stay orders that had been entered in the case. Petitioner appealed.

*Attorney General Edmisten, by Assistant Attorney General Mary I. Murrill and Deputy Attorney General William W. Melvin, for the State.*

*Carter W. Jones and Ralph G. Willey III, for petitioner appellant.*

ERWIN, Judge.

Petitioner was placed under arrest by Highway Patrolman Price and charged with the offense of operating his motor vehicle on a public highway while under the influence of intoxicating liquor. Petitioner was requested to take a breathalyzer test. At the time the test was administered, the operator deemed the breath sample given by petitioner was insufficient; petitioner was advised that the small amount of air was just enough to turn the green light on the breathalyzer and was not enough to get an accurate reading. Petitioner refused to give another sample so that he could be properly tested.

The question for our determination on the record is: Did the petitioner willfully refuse to submit to a breathalyer test? We answer, "Yes," and affirm the trial court.

G.S. 20-16.2(c) provides:

"(c) The arresting officer, in the presence of the person authorized to administer a chemical test, shall request that the person arrested submit to a test described in subsection (a). If the person arrested willfully refuses to submit to the chemical test designated by the arresting officer, none shall be given. However, upon the receipt of a sworn report of the arresting officer and the person authorized to administer a chemical test that the person arrested, after being advised of his rights as set forth in subsection (a), willfully refused to submit to the test upon the request of the officer, the Division shall revoke the driving privilege of the person arrested for a period of six months."

Petitioner contends that he could not have willfully refused to take the test since the petitioner blew into the instrument as required by Trooper Highsmith, and after the test was completed and the breathalyzer sample was declared insufficient for analysis, the trooper again failed to explain to petitioner what was required of him and what was wrong with the sample actually submitted by him.

Patrolman Price testified:

"[W]hen the breathalyzer test was offered to him, he gave a very small amount of air. It was just enough to turn the green light on, and Trooper Highsmith requested him or advised him that his was not a sufficient sample to get an accurate reading. He wouldn't do anymore and wouldn't blow anymore and so Trooper Highsmith told him it would be a refusal if he didn't give a sufficient sample, and he took the machine down. He was putting the machine back up and had taken the chemicals out, and he said, (the petitioner), 'Well, let me take it again.' Trooper Highsmith had already taken the machine down, and he said, 'No, I have already taken it down, and you had a chance to take it on two or three occasions when I asked you to take it and you wouldn't do it.' "

Patrolman Highsmith testified:

"At that time I told him it was not a sufficient amount to run the test and he said, 'That is all you are going to get. I beat the machine before and I will beat it this time.' I said, 'Mr. Bell, you will have to blow deep lung air into the machine.' He then said, 'I will not blow anymore.' I said, 'If you don't blow I will have to call it a refusal.' This I did. I had the machine ready and had checked the list for administering the test. I ran the check list but not in its entirety. I made sure it was running properly. It was a new sample in the chamber and I sterilized the chamber and checked it all. I requested that he submit two or three times to the test after it operated correctly. After I advised him it would be considered a refusal I disassembled the machine.

*    *    *

[I] am instructed as a breathalyzer operator to determine what is a sufficient sample by long deep breaths to obtain the

breath that is deep in the lungs. . . . Without deep air you cannot run an accurate test. In breathalyzer training I was instructed that air in the chamber would make the green light come on. I asked him to blow again until I was sure there was enough deep lung sample of air."

Respondent testified: "Mr. Highsmith read me my rights and I called my brother-in-law, Robert Jenkins, who is an attorney. I asked him to come down and he got there after I had already left. He was not present when the test was given."

The trial court found the following facts:

"That the petitioner submitted to the test initially but failed to provide an adequate sample of breath for analysis.

That the petitioner was given two additional opportunities to satisfactorily complete the breathalyzer test and, on each occasion, refused to so cooperate.

That Trooper Highsmith, having offered the breathalyzer test to the petitioner on three occasions and having waited an excess of 30 minutes after advising the petitioner of his rights, disassembled the instrument in the presence of the petitioner and marked the petitioner as having refused the test. That the petitioner requested an opportunity to submit to the test after Trooper Highsmith had disassembled the instrument in his presence.

From the foregoing facts, the Court concludes that the petitioner willfully refused to take a chemical test of breath in violation of law and the order of the respondent complained of is justified in fact and in law."

Our Supreme Court stated the following in *Joyner v. Garrett, Comr. of Motor Vehicles*, 279 N.C. 226, 235, 182 S.E. 2d 553, 559, *reh. denied*, 279 N.C. 397, 183 S.E. 2d 241 (1971):

"[A] license to operate a motor vehicle is not a natural or unrestricted right, nor is it a contract or property right in the constitutional sense. It is a conditional privilege, and the General Assembly has full authority to prescribe the conditions upon which licenses may be issued and revoked. However, once issued, a license is of substantial value to the holder and may be revoked or suspended only in the manner

and for the causes specified by statute. *Harrell v. Scheidt, Com'r of Motor Vehicles, supra; Fox v. Scheidt, Comr. of Motor Vehicles*, 241 N.C. 31, 84 S.E. 2d 259; *In re Revocation of License of Wright, supra.*"

We hold that the full import of G.S. 20-16.2(c) requires an operator of a motor vehicle, who has been charged with the offense of driving under the influence of intoxicating liquor, to take a breathalyzer test, which means the person to be tested must follow the instructions of the breathalyzer operator. A failure to follow such instruction, as the petitioner did in this event, provided an adequate basis for the trial court to conclude that petitioner willfully refused to take a chemical test of breath in violation of law.

The purpose of administering the breathalyzer test is to produce an accurate result. This is important for the operator of the motor vehicle as well as the State. To administer this test without producing the required result, would render the Act of the General Assembly useless. This, we are not willing to do. Where the findings and conclusions of the trial court are supported by competent evidence, as here, they are conclusive on appeal and must be upheld. *State v. Tuggle*, 284 N.C. 515, 201 S.E. 2d 884 (1974), and *State v. Morris*, 279 N.C. 477, 183 S.E. 2d 634 (1971).

Judgment affirmed.

Judges MARTIN (Robert M.) and ARNOLD concur.