DOUGLAS WOHLFAHRT AND WIFE, LYNN WOHLFAHRT v. LARRY G. SCHNEIDER, M.D.

No. 855SC1326

(Filed 15 July 1986)

1. **Courts § 21.10— conflict of law—note and security agreement—substantive law of Texas—procedural law of North Carolina**

   Substantive issues in an action involving a note and security agreement were to be resolved by application of Texas law and procedural issues by application of North Carolina law where the note and security agreement were executed simultaneously in Texas, the security agreement specifically provided that the transaction would be governed by the law of Texas, the note specified that payment was due in North Carolina, the collateral was located in Texas, and both North Carolina and Texas have adopted the UCC. N.C.G.S. § 25-1-101 *et seq.* (1965 & Supp. 1985).

2. **Contracts § 21.3; UCC § 45— note and security agreement—defendant not in default—anticipatory breach**

   The fact that a defendant in an action on a note and security agreement had not defaulted in payment at the time the suit was commenced did not

necessarily defeat plaintiffs' claim in view of defendant's notice to plaintiffs demanding that they refund all payments and take possession of the goods.

**3. UCC § 23— note and security agreement for medical equipment—acceptance or rejection of equipment—findings not sufficient**

The appellate court could not determine whether a judgment awarding full recovery on a note was correct where the issue of whether defendant rightfully revoked his acceptance of goods was raised by the evidence and pleadings as amended by implication and the court failed to address in its findings and conclusions issues of whether the equipment was nonconforming, whether the nonconformity substantially impaired its value, whether defendant revoked his acceptance within a reasonable time after he discovered or should have discovered the grounds for revocation, the appropriate remedy under the Texas Business Code, and, if the value of the contract was not substantially impaired, other issues that arose upon defendant's testimony that certain of the items were not in proper working condition. N.C.G.S. § 1A-1, Rule 52(a)(1) (1983), N.C.G.S. § 1A-1, Rule 15(b) (1983).

**4. Abatement and Revival § 3— motion to abate denied—pending action in Texas —no error**

There was no error in the denial of defendant's motion to abate based on a pending action in Texas where there was no evidence other than an allegation in defendant's answer and brief that the same parties, the same promissory note and security agreement, the same alleged collateral, and the same transaction were involved; moreover, the pendency of a prior action in another state is not grounds for abatement of a subsequent action begun in North Carolina.

APPEAL by defendant from *Tillery, Judge.* Judgment entered 14 June 1985 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 7 May 1986.

On 18 October 1981, plaintiffs sold certain medical equipment, consisting of an x-ray machine, Kodak processor, examination tables, office furniture, copy machine, file cabinets, a Ritter table, EKG machines, instruments, laboratory equipment and numerous other items, to defendant. The equipment had been used by the male plaintiff for a short time in his family medical practice in the State of Texas which he closed in order to engage in training for a more specialized practice in obstetrics and gynecology. Defendant purchased the equipment in order to open a minor emergency treatment center in Humble, Texas. The sale took place in Texas, although plaintiffs were residents of North Carolina at the time.

The total sale price was $48,500.00, with defendant executing a note for $43,500.00. The note was secured by a security agreement granting plaintiffs a security interest in the equipment.

Both instruments provided for monthly payments in the amount of $1,034.87, beginning 1 November 1981, with interest on the unpaid balance at the rate of fifteen percent (15%) per annum, and attorney's fees in the event of default. The security agreement provided: "Seller agrees that the equipment is in full working condition, and will do such as required to see that the equipment functions properly" and that "[t]he law governing this secured transaction shall be the Uniform Commercial Code of Texas and other applicable laws of the State of Texas."

At the time of the sale, defendant delivered two checks to Mrs. Wohlfahrt; one in the amount of $5,000.00, representing the down payment, and one in the amount of $1,034.87, representing the first monthly payment which was due on 1 November 1981. Mrs. Wohlfahrt deposited the checks in her North Carolina bank, however, defendant subsequently contacted Mrs. Wohlfahrt and advised her that he had placed a stop payment order on his account because his wife's checkbook had been stolen. On 31 October 1981, he mailed her two additional checks, one in the amount of $5,000.00 and one in the amount of $1,034.87. In the meantime, defendant's Texas bank had refused to honor the original $5,000.00 check due to the stop payment order, but honored the original $1,034.87 check. As a result, plaintiffs received the $5,000.00 down payment and the equivalent of two monthly payments.

Defendant subsequently discovered that the copier would not work, and incurred repair bills totalling slightly more than $600.00. He notified Mrs. Wohlfahrt that he had experienced problems with the machine; the evidence is conflicting as to whether he ever sent copies of the repair bills to her for reimbursement. In any event, no reimbursement was made. Thereafter, according to the defendant's testimony, he discovered that the x-ray machine was a 200 MA machine rather than a 500 MA machine as had been represented by plaintiffs. On 13 November 1981, defendant's Texas attorney notified plaintiffs by Certified Mail that due to nonconformity of the goods substantially impairing their value, defendant was revoking his acceptance of the goods. The letter further requested a refund of all amounts which defendant had paid, and notified plaintiffs to take possession of the goods at defendant's office within thirty days.

On 9 December 1981, plaintiffs brought this suit in New Hanover County seeking recovery of the amount due on the note. Defendant made a special appearance, moving to dismiss the action for lack of personal jurisdiction. The trial court denied the motion and that decision was affirmed by this Court. *Wohlfahrt v. Schneider*, 66 N.C. App. 691, 311 S.E. 2d 686 (1984). Defendant then filed answer including a motion to abate the action by reason of a pending action in the State of Texas involving the same subject matter and parties, and a general denial of plaintiffs' allegations.

The case was heard without a jury. The trial court found the following facts:

FIRST: That this is an action on a Promissory Note in which Complaint was filed and Summons issued on December 9, 1981. That a copy of the Summons and Complaint were thereafter served on Defendant on March 9, 1982.

SECOND: That Plaintiffs were citizens and residents of New Hanover County, North Carolina, at the time of the institution of this action, and that the Defendant is a citizen and resident of Harris County, Texas.

THIRD: That on October 18, 1981, the Plaintiffs sold to Defendant certain personal property, consisting of medical equipment and office equipment, for the sum of FORTY-EIGHT THOUSAND FIVE HUNDRED AND NO/100 ($48,500.00) DOLLARS. That Defendant paid to Plaintiffs the sum of FIVE THOUSAND AND NO/100 ($5,000.00) DOLLARS, as a down payment, and executed and delivered to Plaintiffs a Promissory Note for the balance remaining in the amount of FORTY-THREE THOUSAND FIVE HUNDRED AND NO/100 ($43,500.00) DOLLARS.

FOURTH: That Defendant paid two (2) monthly installments in the amount of ONE THOUSAND THIRTY-FOUR AND 87/100 ($1,034.87) DOLLARS, to Plaintiffs, and that Defendant, through an attorney, thereafter informed Plaintiffs in November, 1981, that he did not intend to honor his contract with Plaintiffs, and that he intended to revoke the same.

FIFTH: That since November, 1981, the Defendant has paid no other money to Plaintiffs under the Promissory Note,

other than the two (2) monthly installments, and that there remains due and owing from Defendant to Plaintiffs the sum of FORTY-TWO THOUSAND FIVE HUNDRED ELEVEN AND 62/100 ($42,511.62) DOLLARS.

Based on those findings, the court concluded that defendant's actions constituted "an anticipatory breach of his obligations under the Promissory Note . . ." and entered judgment for plaintiffs for the balance due on the note, interest, and attorney's fees. Defendant appeals.

*Larrick & Mason, by James K. Larrick, for plaintiff appellees.*

*Murchison, Taylor & Shell, by Michael Murchison and Nancy M. Guyton, for defendant appellant.*

MARTIN, Judge.

Defendant's principal contention on appeal is that the trial court erred in finding and concluding that his conduct constituted an anticipatory breach of the promissory note, justifying an award for the full amount due thereon, without considering and applying provisions of the Uniform Commercial Code which govern the right of a buyer of goods to revoke his acceptance of those goods. We agree with defendant that the evidence at trial raised issues which may be resolved only by application of provisions of the Uniform Commercial Code and that the trial court's findings and conclusions do not fully determine those issues. Accordingly, we vacate the judgment and remand the case to the trial court.

[1] As a preliminary matter, we deem it apposite to discuss briefly the issue of whether the substantive law of Texas or North Carolina governs the rights of the parties to this action. The note and security agreement at issue were executed simultaneously in the State of Texas. The security agreement specifically provided that the transaction would be governed by the law of Texas. The note specified that payment was due in North Carolina; the collateral was located in Texas. Both North Carolina and Texas have adopted the Uniform Commercial Code (UCC). N.C. Gen. Stat. § 25-1-101 *et seq.* (1965 & Supp. 1985); Texas Bus. Code Ann. § 1.101 *et seq.* (Vernon 1968 & Supp. 1986). Where the trans-

action bears a reasonable relation to more than one state, the UCC permits the parties to agree with respect to which state's law shall govern their rights and duties. Texas Bus. Code Ann. § 1.105(a) (Vernon Supp. 1986); N.C. Gen. Stat. § 25-1-105(1) (1965). This section modifies traditional conflict of laws rules. *Bernick v. Jurden*, 306 N.C. 435, 293 S.E. 2d 405 (1982). Since the goods are located in Texas and performance is due in this State, we hold, and the parties acknowledge, that the transaction bears a reasonable relationship to both states. Accordingly, the agreement of the parties requires that the substantive issues involved in this case be resolved by application of Texas law. Procedural issues, however, must be determined by application of the law of North Carolina. *Tennessee Carolina Transp., Inc. v. Strick Corp.*, 283 N.C. 423, 196 S.E. 2d 711 (1973).

[2] Defendant initially contends that plaintiffs' own evidence defeats their right to recover on the promissory note because it affirmatively discloses that he was not in default at the time plaintiffs commenced this action. We disagree. The note called for monthly installments of $1,034.87 beginning 1 November 1981. The complaint was filed 9 December 1981; at that time, according to all the evidence, defendant had paid two monthly installments of $1,034.87. However, the trial court concluded, based upon its finding that defendant had notified plaintiffs in November of his intention to revoke the contract, that defendant had effected an anticipatory breach of the contract. Under Texas law, an anticipatory breach of contract may exist "if, in positive and unconditional terms, a party refuses to perform further thereunder." *Barclaysamerican/Business Credit, Inc. v. E & E Enterprises, Inc.*, 697 S.W. 2d 694, 701 (Tex. Ct. App. 1985) (citing official commentary to Texas Bus. Code Ann. § 2.610 (1968), anticipatory repudiation "can result from action which reasonably indicates a rejection of the continuing obligation"). Accordingly, the fact that defendant had not defaulted in payment at the time the suit was commenced does not necessarily defeat plaintiffs' claim, in view of his notice to them demanding that they refund all payments and take possession of the goods.

[3] However, the same evidence relied upon by the trial court to establish defendant's anticipatory breach of the contract also raises the issue of his right to timely revoke his acceptance of the goods, as provided by Texas Bus. Code Ann. § 2.608 (Vernon

1968). (See also N.C. Gen. Stat. § 25-2-608 (1965).) As provided by that section, a buyer, who has accepted goods, may revoke his acceptance and cancel the contract if the goods are nonconforming and the nonconformity substantially impairs the value of the goods. *Freeman Oldsmobile Mazda Co. v. Pinson*, 580 S.W. 2d 112 (Tex. Civ. App. 1979) (application for writ of error refused).

Although defendant's answer to the substantive allegations of the complaint consisted only of a general denial, and did not raise the issue of revocation of acceptance, that issue was raised by the evidence at trial. Defendant testified, without objection, that after he had accepted the equipment, he discovered that the x-ray machine was a 200 MA machine, unsuitable for his purposes, rather than a 500 MA machine as had been represented by plaintiffs. The copy machine required expensive repairs, and other items of equipment were not working properly. In addition, certain items which were to have been furnished by plaintiffs were not furnished. As a result, defendant, through his attorney, wrote to plaintiffs advising them that the goods were nonconforming, which substantially impaired their value, that he was revoking his acceptance of them, demanding a refund, and requesting that they take possession of the equipment. According to his testimony, Mrs. Wohlfahrt notified him that she was coming to Texas to take possession of the goods, but that she did not do so.

"When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." N.C. Gen. Stat. § 1A-1, Rule 15(b) (1983). Where no objection is raised at trial on the grounds that the proffered evidence is not within the scope of the pleadings no formal amendment is required and the pleadings are deemed amended by implication. *Taylor v. Gillespie*, 66 N.C. App. 302, 311 S.E. 2d 362, *disc. rev. denied*, 310 N.C. 748, 315 S.E. 2d 710 (1984). In addition, plaintiffs alleged in their complaint that defendant had notified them that he intended to revoke the contract.

In cases where the trial judge sits as the trier of facts, he is required to find facts upon all issues raised by the pleadings and evidence, declare the conclusions of law arising on the facts found, and enter judgment accordingly. N.C. Gen. Stat. § 1A-1, Rule 52(a) (1) (1983); *Coggins v. City of Asheville*, 278 N.C. 428, 180 S.E. 2d

149 (1971). The requirement is designed to dispose of the issues raised and to permit "a reviewing court to determine from the record whether the judgment—and the legal conclusions which underlie it—represent a correct application of the law." *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E. 2d 185, 189 (1980).

In the present case, the issue of whether or not defendant rightfully revoked his acceptance of the goods was raised by the evidence and by the pleadings as amended by implication. The issue required consideration and application of the UCC, as adopted in Texas, and findings of fact with respect to whether the equipment was nonconforming and if so, whether the nonconformity substantially impairs its value and whether defendant revoked his acceptance within a reasonable time after defendant discovered or should have discovered that grounds for revocation existed. In the event that defendant is found to have rightfully revoked acceptance, a determination must be made as to the remedy available to him under the Texas Business Code. On the other hand, should the court find that any nonconformity did not substantially impair the value of the contract, other issues arise upon defendant's testimony that certain of the items were not in proper working condition, as had been warranted by plaintiffs. Since the trial court failed to address these issues in its findings and conclusions, this Court has no means of determining whether the trial court's judgment, awarding plaintiffs full recovery on the note, was correct. Therefore, we deem it necessary that this case be reconsidered at the trial level.

[4] Because we order a new trial, we consider it appropriate to briefly address defendant's assignment of error relating to the denial of his motion to abate this action. Although defendant asserts in his brief that "there is a pending action in the State of Texas involving the same parties, the same promissory note and security agreement, the same alleged collateral and the same transaction upon which plaintiffs have filed their complaint," the record is bereft of any evidence, other than a similar allegation in defendant's answer, to support this assertion. Even assuming, however, that an action was pending in the State of Texas of the nature and scope alleged by defendant, it would not support defendant's motion on abatement. The pendency of a prior action in the courts of another state, involving the same parties and subject matter, is not grounds for abatement of a subsequent action

begun in this State. *Lehrer v. Edgecombe Mfg. Co., Inc.*, 13 N.C. App. 412, 185 S.E. 2d 727 (1972); 1 Strong's North Carolina Index 3d, Abatement and Revival § 3 (1976).

For the reasons stated, the judgment appealed from is vacated and this case is remanded to the Superior Court for a new trial in accordance with this opinion. The parties shall be permitted to amend their pleadings to conform them to the evidence, if they so desire.

Vacated and remanded.

Judges PHILLIPS and PARKER concur.