KEVIN THOMAS TOLBERT v. WILLIAM S. HIATT, COMMISSIONER NORTH CAROLINA DIVISION OF MOTOR VEHICLES

No. 8825SC1206

(Filed 5 September 1989)

**1. Automobiles and Other Vehicles § 2.4— breathalyzer test— additional request for sequential sample not required**

An officer's original request that petitioner submit to a chemical breath analysis was sufficient to comply with the provisions of N.C.G.S. § 20-16.2(c) without an additional request before a second breath sample was taken. The statutes require the officer to request a chemical analysis based on

TOLBERT v. HIATT

[95 N.C. App. 380 (1989)]

sequential breath samples and do not require a sequence of requests for separate chemical analyses. N.C.G.S. § 20-139.1(b3).

2. **Automobiles and Other Vehicles § 2.4— refusal to remove portion of dollar bill from mouth—willful refusal to take breathalyzer**

Petitioner willfully refused to take a breathalyzer test when he refused the breathalyzer operator's request that he remove the corner of a dollar bill from his mouth, since administrative regulations require the breathalyzer operator to determine that the person to be tested has not eaten in the fifteen minutes prior to the tests, and a reasonable method for determining that the person has not eaten is to prohibit him from placing foreign objects in his mouth.

3. **Automobiles and Other Vehicles § 2.4— refusal of breathalyzer test—findings sufficient to support license revocation**

The trial court's finding that petitioner willfully refused "without justification or excuse" to submit to a chemical analysis upon the request of the charging officer was a finding on the ultimate facts which supported the court's revocation of petitioner's driver's license.

APPEAL by petitioner from *Ferrell (Forrest A.), Judge.* Judgment entered 17 August 1988 in Superior Court, CALDWELL County. Heard in the Court of Appeals 11 May 1989.

*Wilson and Palmer, P.A., by David S. Lackey, for petitioner.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Robert E. Cansler, for the State.*

GREENE, Judge.

This appeal arises from the Superior Court's affirmance of a Department of Motor Vehicles' order revoking petitioner's driving privileges for an alleged refusal to submit to a breathalyzer test. The evidence at the non-jury trial tended to show petitioner was arrested by Officer Floyd on 7 June 1987 for driving while impaired. After transporting petitioner to the sheriff's department, Officer Floyd noticed petitioner was chewing something which Floyd identified as a penny. Officer Floyd told petitioner "not to put anything in his mouth until we got in to see the breathalyzer operator."

At 1:45 a.m., Officer Floyd requested that defendant submit to a chemical analysis to be performed by Patrolman Burleson, a lawfully authorized and licensed breathalyzer operator. During the preparation of the breathalyzer, Patrolman Burleson observed petitioner had placed a piece of paper or foreign matter in his mouth. Patrolman Burleson asked petitioner to remove the substance from his mouth and instructed petitioner that "under North Carolina law if a subject places any foreign matter in his mouth that he could be considered a willful refusal," and a chemical test could not be administered "fairly as required by law." The first breathalyzer test was performed at 2:25 a.m., and the result was a blood/alcohol level of 0.16.

During the preparation for a second test, Patrolman Burleson again observed petitioner chewing on foreign matter which appeared to be the corner of a dollar bill. Patrolman Burleson advised petitioner three times to remove this foreign matter from his mouth or he would be reported as willfully refusing the test. On each of these three times, petitioner stated he did not have anything in his mouth. Despite petitioner's denial, Patrolman Burleson observed petitioner did have the corner of a dollar bill in his mouth. Patrolman Burleson asked petitioner to remove the object from his mouth. Petitioner refused to do so and Patrolman Burleson reported petitioner as willfully refusing the second test five minutes after obtaining the results of the first test.

Based on this evidence, the trial court found in pertinent part:

3. That the petitioner was taken before Patrolman Ken Burleson . . . who informed the petitioner orally and also gave petitioner a notice in writing of all of petitioner's rights as enumerated [by statute].

4. That the petitioner willfully refused, without just cause or excuse, to submit to a chemical analysis upon the request of the charging officer.

From the foregoing facts, the Court concludes that the petitioner is subject to revocation of license pursuant to N.C.G.S. Sec. 20-16.2(d) and the order of the respondent complained of is justified in fact and in law.

Defendant appeals.

TOLBERT v. HIATT

[95 N.C. App. 380 (1989)]

The issues presented are: I) whether the evidence supported the trial court's finding that petitioner willfully refused without just cause or excuse to submit to a chemical analysis under N.C.G.S. Sec. 20-16.2(d); and II) whether the trial court's revocation was based on adequate findings of fact.

I

Section 20-16.2(c) (1983) states that, "the charging officer, in the presence of the chemical analyst who has notified the person of his rights under subsection (a), must request the person charged to submit to the type of chemical analysis designated. If the person charged willfully refuses to submit to that chemical analysis, none may be given under the provisions of this section, but refusal does not preclude testing under other applicable procedures of law." Section 20-16.2(d) provides a procedure for revoking a petitioner's driver's license based on his or her refusal to submit to chemical analysis. After 1 January 1985, the regulations of the Commission for Health Services governing chemical breath analyses "must require the testing of at least duplicate sequential breath samples." N.C.G.S. Sec. 20-139.1(b3) (1983) (emphasis added). "A person's willful refusal to give the sequential breath samples necessary to constitute a valid chemical analysis is a willful refusal under G.S. 20-16.2(c)." The sense of the word "refusal" as employed in Section 20-16.2 is "the declination of a request or demand, or the omission to comply with some requirement of law, as the result of a positive intention to disobey." *Joyner v. Garrett*, 279 N.C. 226, 233, 182 S.E.2d 553, 558 (1971).

[1] Petitioner first contends he did not willfully refuse to submit to a chemical analysis at the request of the charging officer as required under Section 20-16.2(c) since Officer Floyd did not request any additional chemical analysis after the first test was completed. However, the statutes require the charging officer to request a chemical analysis based on *sequential* breath samples — not a sequence of requests for separate chemical analyses. Thus, Officer Floyd's original request that petitioner submit to a chemical analysis was sufficient to comply with the requirements of Section 20-16.2(c). As this court held on similar facts, "the Legislature did not intend to prescribe such precise terminology or to impose 'such a rigid sequence of events as contended by' plaintiff. Such contrived precision is unnecessary for the protection of suspects and is clearly detrimental to the effective enforcement of drunk driving laws."

*Mathis v. North Carolina Divison of Motor Vehicles,* 71 N.C. App.
413, 416, 322 S.E.2d 436, 438 (1984) (citations omitted).

Furthermore, it is undisputed that petitioner refused to follow
the instructions of Patrolman Burleson to remove the dollar bill
from his mouth in preparation for the second test. In *Bell v. Powell,*
41 N.C. App. 131, 135, 254 S.E.2d 191, 194 (1979), this court held that:

> [T]he full import of G.S. 20-16.2(c) requires an operator of a
> motor vehicle . . . to take a breathalyzer test, which means
> the person to be tested must follow the instructions of the
> breathalyzer operator. A failure to follow such instruction,
> as the petitioner did in this event, provided an adequate basis
> for the trial court to conclude that petitioner willfully refused
> to take a chemical test of breath in violation of law.

However, petitioner contends that the above statement in *Bell*
must be interpreted in light of the subsequent statement that,
"the purpose of administering the breathalyzer test is to produce
an accurate result. This is important for the operator of the motor
vehicle as well as the State. To administer this test without produc-
ing the required result would render the act of the General Assembly
useless." *Id.*

[2]  Petitioner contends the State failed to show that petitioner's
chewing on the corner of a dollar bill would affect the result of
the breathalyzer test. However, Section 20-139.1(b) provides that
the breathalyzer operator must perform the test according to the
methods approved by the Commission for Health Services. Ad-
ministrative regulations place an affirmative duty on the breathalyzer
operator to "insure observation period requirements have been
met." 10 N.C.A.C. 7B-0336. The "observation period" requires, among
other things, that the chemical analyst determine that the person
to be tested has not eaten "in the fifteen minutes immediately
prior to the collection of a breath specimen . . . ." 10 N.C.A.C.
7B-0102. The regulations do not specify how the breathalyzer operator
shall discharge these responsibilities. A reasonable method for deter-
mining that the subject has not "eaten" in fifteen minutes is to
prohibit him from placing foreign objects in his mouth. Thus, under
*Bell,* we conclude petitioner refused the breathalyzer operator's
proper instructions and thereby willfully refused to take the
breathalyzer test under Section 20-16.2(c).

II

[3] Petitioner contends, in any event, the trial court's Finding No. 3 was in fact a conclusion of law; therefore, petitioner contends there were no findings by the trial court to support its order of revocation. We disagree. Proceedings involving the suspension or revocation of a license to operate a motor vehicle are civil and not criminal in nature. *Joyner*, 279 N.C. at 234, 182 S.E.2d at 559. In a non-jury trial, Rule 52(a)(1) requires the trial court to "find the facts specially and state separately his conclusions of law thereon and direct the entry of the appropriate judgment." N.C.G.S. Sec. 1A-1, Rule 52(a)(1) (1983). However, the trial court need not recite every evidentiary fact presented at the hearing, but must only make specific findings on the ultimate facts established by the evidence that are determinative of the questions raised in the action and essential to support its conclusions. *Mitchell v. Lowery*, 90 N.C. App. 177, 184, 368 S.E.2d 7, 11 (1988). When findings are required, they must be made with sufficient specificity to allow meaningful appellate review. *Andrews v. Peters*, 318 N.C. 133, 347 S.E.2d 409 (1986). The purpose of this requirement is to permit the reviewing court to determine from the record whether the judgment and the legal conclusions which underlie it represent a correct application of the law. *Wohlfahrt v. Schneider*, 82 N.C. App. 69, 76, 345 S.E.2d 448, 452 (1986).

The trial court's finding that petitioner willfully refused "without just cause or excuse" to submit to a chemical analysis upon the request of the charging officer was an ultimate fact finding indicating the trial court rejected all opposing inferences raised by petitioner's evidence that the refusal was not willful or was excused. As such, that finding permits adequate appellate review of the ultimate fact at issue. *See Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 218 S.E.2d 368 (1975). Accordingly, we reject this assignment of error.

Affirmed.

Judges JOHNSON and COZORT concur.