IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-709

No. COA21-684

Filed 1 November 2022

Jackson County, No. 15 CVS 511

DEPARTMENT OF TRANSPORTATION, Plaintiff,

v.

MOUNTAIN VILLAGES, LLC; and ENTEGRA BANK, Defendants.

Appeal by Defendant Mountain Villages, LLC, from order entered 28 July 2021 by Judge Jacqueline D. Grant in Jackson County Superior Court. Heard in the Court of Appeals 7 June 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Liliana R. Lopez, for Plaintiff-Appellee Department of Transportation.*

*The Van Winkle Law Firm, by Jonathan H. Dunlap and Jackson Bebber, for Defendant-Appellant Mountain Villages, LLC.*

COLLINS, Judge.

Defendant Mountain Villages, LLC, appeals from the trial court's order determining, inter alia, that Mountain Villages failed to meet its burden of establishing that it has acquired a prescriptive easement. We affirm.

## I. Background

Plaintiff Department of Transportation ("DOT") initiated a condemnation action on 14 August 2015 in Jackson County Superior Court against Defendants

Mountain Villages, LLC,[1] and Entegra Bank[2] by filing a complaint and Declaration of Taking and Notice of Deposit, seeking to acquire a portion of Defendants' property ("subject property"). The subject property is commercial property comprised of retail businesses and several residential units. Directly across from the subject property was a vacant lot (the "Parking Island"), which was used by Defendants and Defendants' customers for parking, and as a general parking area for carpooling by other people in the area. Lori Richards, owner and manager of Mountain Villages, believed that when she purchased the subject property, she also owned the Parking Island and had the right to have customers park on it. However, the Parking Island was actually owned by Samuel and Michelle Hopkins.

¶ 3        Entegra Bank filed its answer on 29 June 2016 and Mountain Villages filed its answer on 29 July 2016. Prior to initiating condemnation, DOT negotiated with Defendants to acquire the subject property and had the subject property appraised by M. Sean Ward. Based on Ward's determination of just compensation, DOT deposited the sum of $393,450 with the Jackson County Superior Court as its estimate of just compensation for the taking of the subject property, which included the Parking Island.

---

[1] Defendant Mountain Villages, LLC, was known as Kokopelli Village, LLC, when it purchased the subject property in 2003; Kokopelli Village, LLC, changed its name to Mountain Villages, LLC, sometime after 2010.

[2] Entegra Bank is not a party on appeal.

¶ 4 In his appraisal, Ward noted that he valued the subject property "under the following extraordinary assumptions:"

> The subject property has benefitted from the use of a parking area that is owned by the adjacent property owner, Mr. Hopkins . . . . As a result of the project, the adjacent property utilized as a parking area will no longer be available for use by the subject property owner. In this instance, I have appraised the subject property under the extraordinary assumption that the area utilized for parking prior to the project was for use by the subject owner under a prescriptive easement. Note that this decision was made by the client's legal advisor, and as a result, I have utilized the extraordinary assumption that the prescriptive easement is in place as of the date of this appraisal.

Ward further provided that "[i]f any of the noted extraordinary assumptions . . . proves to be false, I reserve the right to amend my value estimate(s) and the results of this report are null and void."

¶ 5 On 11 May 2017, DOT filed a plat "of the land taken and such additional area as may be necessary to properly determine the damages," pursuant to N.C. Gen. Stat. § 136-106(c). On 25 October 2019, Defendants moved for leave to amend their answers to add counterclaims for inverse condemnation; the trial court allowed the amendments by order. In May 2021, Mountain Villages moved the trial court to "hear and determine any and all issues raised by the pleadings other than the issue of damages," pursuant to N.C. Gen. Stat. § 136-108 (the "section 108 hearing"). Mountain Villages also moved the court to cause DOT "to amend its pleadings to

conform to the evidence, deposit with the Court the estimated amount of compensation for the additional, inverse, taking, [and] for the recovery of expenses[.]" The section 108 hearing took place on 30 June 2021.

¶ 6 After the hearing, the trial court entered an order on 28 July 2021 granting in part and denying in part Mountain Villages' motion. The trial court concluded, in pertinent part, that Mountain Villages "has failed to meet its burden of establishing a prescriptive easement" and that a "jury shall determine the just compensation the Defendant is entitled to receive for the taking of a portion of their property by [DOT] as enumerated in the [DOT's] Complaint and Declaration of Taking."

## II.  Discussion

¶ 7 Mountain Villages argues that the trial court erred by determining that Mountain Villages did not have a prescriptive easement over the Parking Island, and thus was not entitled to compensation for its taking.

### A. Jurisdiction

¶ 8 The trial court's order, which determines the title or area taken in this condemnation action, is an interlocutory order that affects a substantial right. *See N.C. Dep't of Transp. v. Stagecoach Vill.*, 360 N.C. 46, 48, 619 S.E.2d 495, 496 (2005) ("[I]nterlocutory orders concerning title or area taken must be immediately appealed as 'vital preliminary issues' involving substantial rights adversely affected." (citations omitted)). Immediate appeal therefore lies to this Court, pursuant to N.C.

Gen. Stat. §§ 1-277(a) and 7A-27(b)(3)(a) & (b).

**B. Standard of Review**

¶ 9        Issues under the purview of N.C. Gen. Stat. § 136-108 are decided by a judge sitting without a jury. *See* N.C. Gen. Stat. § 136-108 (2015) ("After the filing of the plat, the judge . . . shall . . . hear and determine any and all issues raised by the pleadings other than the issue of damages[.]"). "[W]hen the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether the conclusions of law were proper in light of such facts." *Anthony Marano Co. v. Jones*, 165 N.C. App. 266, 267-68, 598 S.E.2d 393, 395 (2004) (citation omitted). Unchallenged findings of fact are binding on appeal. *Lab. Corp. of Am. Holdings v. Caccuro*, 212 N.C. App. 564, 567, 712 S.E.2d 696, 699 (2011). "The trial court's conclusions of law are reviewed de novo, wherein this Court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Stikeleather Realty & Invs. Co. v. Broadway*, 241 N.C. App. 152, 160, 772 S.E.2d 107, 113 (2015) (quotation marks and citation omitted).

**C. Analysis**

**1. *Challenged Findings of Fact***

¶ 10        Mountain Villages argues that findings of fact 15(e), 15(g), and 19 are unsupported by the evidence.

*a. Finding 15(e)*

¶ 11    Finding 15(e) states:

> Mr. Day advised Ms. Richards of the fact that [Mountain Villages] did not have any ownership interest, easement, or legal rights in the Parking Island when he initially met with her to discuss compensation for the area of [Mountain Villages'] property that would be taken for the highway/bridge project.

¶ 12    At trial, the following exchange took place between DOT's counsel and Jacob Day, a right-of-way agent employed with DOT, upon Day's direct examination:

> [Counsel]: So you personally spoke with Ms. Richards?
>
> [Day]: Yes, ma'am.
>
> . . . .
>
> [Day]: I was the agent for this claim.
>
> [Counsel]: The agent, okay. And at any point did you tell her that she did not own the parking island?
>
> [Day]: Yes. On the initial contact, when I was explaining the project and the impacts to the property, the issue was brought up about the parking in the gravel island.
>
> [Counsel]: Who brought that up; do you recall?
>
> [Day]: I did. I brought it up. Because based off of our research, when we get a set of plans, there was a severed piece of property that was in between these roads that an island was created. Well, our plans were unclear about ownership, and we got our location and surveys unit to do extensive deed research on that. And when they gave us their results, it was the Hopkinses that owned the actual property. And that had been in their family for years.
>
> [Counsel]: So did your office do that deed research?
>
> [Day]: No. The location survey's office did that, provided that. The Department of Transportation did that.

[Counsel]:  But do you get the results of those deeds?

[Day]:  Yes.

[Counsel]:  Okay.  And you're stating that the result that you received from the location and survey unit is that Mr. Hopkins owned that parking island?

[Day]:  Correct.

[Counsel]:  And you told Ms. Richards this?

[Day]:  Yes, ma'am.

[Counsel]: And what was her reaction?

[Day]: She was surprised.  She thought that she had ownership of that.

[Counsel]: To your knowledge, does it appear in her chain of title that she owns it?

[Day]: Not to my knowledge, no.  There was nothing that we found in writing that gave her rights to that.

[Counsel]: Have you personally looked through those deeds and title work?

[Day]: I have.

[Counsel]: And is it your testimony that you never found in her chain of title that she owned that parking island?

[Day]: To the best of my knowledge, we never found it.  I never found it.

[Counsel]: To the best of your knowledge, was there any indication that she perhaps owned an easement to that parking island?

[Day]: I never found any legal rights to that.

[Counsel]: And you indicate that you spoke with her in 2014?

[Day]: Correct.

Additionally, on re-direct, the following exchange took place:

> [Counsel]: I've just got a couple quick questions for you. And did you explain -- when you told Ms. Richards that she didn't, and I'm using quotes here, own the parking island, did you explain the difference in fee simple ownership and easements?
>
> [Day]: I tried to convey that, but, yes, you are correct. We explained that the Hopkinses owned the actual land that she was using.
>
> [Counsel]: When you say owned, you mean the fee ownership, right?
>
> [Day]: It was in their deed, yes.

¶ 13 This testimony is competent evidence to support the trial court's finding of fact 15(e) that Day told Richards that she did not have any ownership interest, easement, or legal rights in the Parking Island.

### b. *Finding 15(g)*

¶ 14 Finding 15(g) states:

> When Mr. Day was a student at Western Carolina University, he and other students also used the Parking Island for parking. He was never told he couldn't use the Parking Island.

¶ 15 It is true that there is no record support for the non-material portion of the finding that Day "was a student at Western Carolina University." However, Day did testify on direct examination that he used the Parking Island while he was a student in high school:

> [Counsel]: Where are you from?
>
> [Day]: I am from the Sylva area as well.

[Counsel]:  Okay.

[Day]:  I lived in Sylva all my life just, basically, five miles north of Cullowhee.

[Counsel]:  Born and raised in Sylva?

[Day]:  Born and raised.

[Counsel]:  So are you familiar with this project or, I'm sorry, with this property?

[Day]:  Yes.

[Counsel]:  And the surrounding area?

[Day]:  Correct.

[Counsel]:  And have you ever used that traffic island parking island?

[Day]:  I have, yes.

[Counsel]:  Okay.  How many times have you used it?

[Day]:  Oh, a handful of times.  It had been a while, but I know growing up, in high school, we used to meet there and carpool and fish.  And I know family members have lived in the area, live in Cullowhee, and we would carpool from there and friends who have used that area to get out and tube down the river.

. . . .

[Counsel]:  Have you ever been told by anyone that you can't do that?

[Day]:  I personally have not, no.

¶ 16    Day's testimony supports the substance of finding 15(g) that Day used the Parking Island while in school, knew friends and family members who used the Parking Island to meet for carpooling, and was never told that he could not use the Parking Island.

### c. *Finding 19*

¶ 17 Finding 19 states:

> There is no evidence that any signs were ever placed on the Parking Island indicating that parking was for the customers of [Mountain Villages] or any other entity.

¶ 18 Mountain Villages argues that "everyone who testified at the hearing testified that Mountain Villages had signage on the Parking Island" and claims that this finding of fact is directly contradicted by Documentary Exhibit 118; Richards' testimony; and the testimony of Mr. Jeffrey Brown,[3] a civil engineer who testified at trial about the parking conditions on the Parking Island.

¶ 19 Documentary Exhibit 118 is a photograph of a truck parked in the Parking Island next to a sign for Suds Your Duds Laundromat. The sign indicates the name of the laundromat and its services, and it has an arrow on top pointing across Old Cullowhee Road in the direction of the laundromat. The sign contains no language about parking.

¶ 20 Richards testified that there were signs around the Parking Island "to point to where the building was, as people came around the corner, so they could see that we were there. So kind of advertising." Richards acknowledged that there was "signage" around the Parking Island but did not testify that the signage contained any parking

---

[3] The parties stipulated to Brown's expertise in civil engineering and his admission as an expert witness.

information. When asked on cross examination if there was "signage on the Parking Island saying that it was for customers only at any point," Richards responded, "I don't remember" and "We may have. I just can't remember clearly if we did."

¶ 21        Brown testified that, upon examining the Parking Island prior to construction, there was "ample parking" directly across from the laundromat and music store. Brown further testified that he saw one sign posted on the Parking Island; upon being shown Documentary Exhibit 118, Brown explained that the photo exhibit showed "an advertisement for the laundromat. It's their sign." Brown further explained that "[t]here is an arrow leader pointing from the parking area to the laundromat on the top [of the sign], and then it says Suds your Duds Laundromat[.]" Brown testified that he did not see any other signs for any other business on the Parking Island.

¶ 22        The Documentary Exhibit 118, Richards' testimony, and Brown's testimony show that the signs did not contain parking information and support finding 19 that there is no evidence that signs were ever placed indicating that parking was for customers of Mountain Villages' business.

¶ 23        This competent record evidence supports the challenged findings of fact 15(e), 15(g), and 19, and those findings are thus binding on appeal. *See Jones*, 165 N.C. App. at 267-68, 598 S.E.2d at 395. Moreover, as Mountain Villages did not challenge any of the remaining findings of fact, the trial court's remaining findings are also binding on appeal. *See Lab. Corp. of Am. Holdings*, 212 N.C. App. at 567, 712 S.E.2d

at 699.

### 2. *Additional Evidence*

¶ 24      Mountain Villages argues that the trial court erred by failing to consider the following evidence: the estimated sum of just compensation; the affidavit of Mr. Troy Burns, a prior owner of the subject property, which was presented in an effort to tack his alleged period of adverse possession of the Parking Island to Mountain Villages' alleged period for the required prescriptive period of 20 years; and certain testimony and exhibits regarding ownership of the Parking Island and enforcement of the parking spaces on the Parking Island.

#### a. *Estimated Sum of Just Compensation*

¶ 25      Mountain Villages argues that the trial court erred by failing to consider the sum of money deposited by DOT upon its initiation of the condemnation action as that sum speaks directly to the issue of title and interests taken by DOT. This argument lacks merit.

¶ 26      When condemnation of land becomes necessary, the DOT shall institute a civil action by filing a complaint and a declaration of taking. N.C. Gen. Stat. § 136-103(a) (2015). The complaint shall contain "[a] prayer that there be a determination of just compensation in accordance with the provisions of this Article." *Id.* § 136-103(c)(6) (2015). Attached to the declaration shall be "[a] statement of the sum of money estimated by said [DOT] to be just compensation for said taking." *Id.* § 136-103(b)(5)

(2015). "The filing of said complaint and said declaration of taking shall be accompanied by the deposit of the sum of money estimated by said [DOT] to be just compensation for said taking[.]" *Id.* § 136-103(d) (2015). "In the event the amount of the final judgment is less than the amount deposited . . . , [DOT] shall be entitled to recover the excess of the amount of the deposit over the amount of the final judgment and court costs incident thereto[.]" N.C. Gen. Stat. § 136-121 (2015).

¶ 27        DOT's initial deposit was an *estimated sum* for just compensation. DOT is not bound by its estimate; DOT asks for a determination of just compensation in accordance with the statute and is entitled to recover any excess of the amount of the deposit over the amount of the final judgment. As the deposited sum is not relevant to the issue of title and interests taken by DOT, the trial court did not err by failing to consider the sum as evidence of Mountain Villages' interest in the Parking Island.

*b. Burns' Affidavit*

¶ 28        Mountain Villages argues that the trial court erred by failing to consider the affidavit of Burns, a prior owner of the subject property.

¶ 29        "Our Court reviews the trial court's ruling on the admissibility of affidavits for an abuse of discretion." *Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 225, 768 S.E.2d 582, 595 (2015) (quotation marks and citation omitted). Furthermore, the "appellant must show not only that the trial court abused its discretion in striking an affidavit, but also that prejudice resulted from that error."

*Id.* at 226, 768 S.E.2d at 596 (quotation marks and citation omitted).

¶ 30        Burns' affidavit was presented in an effort to tack his alleged period of adverse possession of the Parking Island to Mountain Villages' alleged period of adverse possession for the required prescriptive period of 20 years.

¶ 31        The trial court found as follows:

> [Mountain Villages] presented the affidavit of Troy Burns during the hearing in an effort to establish privity with the prior owner of the subject property so [Mountain Villages] could tack successive adverse possession of the Parking Island in the aggregate for the prescriptive period of twenty years. However, the affidavit of Mr. Burns was executed one day prior to the hearing. There is no evidence that [DOT] was provided notice of [Mountain Villages'] intention to use the affidavit or the particulars of the affidavit, sufficiently in advance of the hearing so as to provide the [DOT] with a fair opportunity to prepare to meet the statement.

¶ 32        Here, the trial court apparently excluded Burns' affidavit because it was executed only one day prior to the section 108 hearing, DOT was not given notice of the intention to use Burns' affidavit, and DOT did not have a fair opportunity to prepare to meet the statement. Despite moving for the section 108 hearing in May 2021, Defendant presented Burns' affidavit for the first time during the hearing. Defendant claims that it was unaware DOT was going to contest the prescriptive easement. However, the purpose of the section 108 hearing is to "hear and determine *any and all issues* raised by the pleadings other than the issue of damages," N.C. Gen.

Stat. § 136-108 (emphasis added), and the issue of whether Defendant had acquired a prescriptive easement to the Parking Island was raised in DOT's pleadings.

¶ 33    We cannot say that the trial court's exclusion of Burns' affidavit was an abuse of discretion. *Supplee*, 239 N.C. App. at 225, 768 S.E.2d at 595. Moreover, even if the trial court had abused its discretion in excluding Burns' affidavit, Defendant has failed to show any resulting prejudice. Burns' affidavit does not show that he owned the Parking Island for a length of time over 20 years or that Burns' use of the Parking Island was anything but permissive. *See id.* at 227, 768 S.E.2d at 597 (concluding that "even assuming *arguendo* that the trial court abused its discretion . . . , [the plaintiff] has failed to show any resulting prejudice").

*c. Other Evidence*

¶ 34    Further, while Mountain Villages has provided examples of evidence that it believes should have been included in the trial court's order, and argues that the trial court erred in failing to consider such evidence, we note that the trial court is not required to recite all of the evidentiary facts before it. *See Tolbert v. Hiatt*, 95 N.C. App. 380, 385, 382 S.E.2d 453, 456 (1989). "The mere introduction of evidence does not entitle the proponent to a finding thereon, since the [trial court] must pass on its weight and credibility[.]" *See Long v. Long*, 71 N.C. App. 405, 407, 322 S.E.2d 427, 430 (1984) (citation omitted); *see also* N.C. Gen. Stat. § 1A-1, Rule 52 (2015).

¶ 35    Here, after making relevant findings as to ownership and use, the trial court

concluded that Mountain Villages "failed to present sufficient evidence establishing that its use of the Parking Island was not permissive" and that the evidence was insufficient to establish either that Mountain Villages sought permission to use the Parking Island or that Hopkins ever objected to Mountain Villages' use of the Parking Island. As the trial court made sufficient findings of fact to resolve the ultimate issue of whether Mountain Villages met its burden of establishing that it acquired a prescriptive easement, it did not need to restate all of the evidence presented. *Tolbert*, 95 N.C. App. at 385, 382 S.E.2d at 456.

### 3. *Challenged Conclusions of Law*

¶ 36        Mountain Villages next argues that the findings of fact do not support conclusions of law 5 and 7. The challenged conclusions state:

> 5. [Mountain Villages] has failed to present sufficient evidence establishing that its use of the Parking Island was not permissive. "Mere permissive use of a way over another's land cannot ripen into an easement by prescription no matter how long it continues." *Yadkin Valley Land Co. v. Baker*, 141 N.C. App. 636, 638, 539 S.E.2d 685, 688 (2000) (citing *Dickinson v. Pake*, 284 N.C. 576, 581, 201 S.E.2d 897, 900 (1974)). "Furthermore, any such use is presumed to be permissive unless that presumption is rebutted by evidence to the contrary." *Id.*
>
> . . . .
>
> 7. [Mountain Villages] failed to present sufficient evidence that it made repairs or improvements on the Parking Island of such a nature as to put the owner of the Parking Island on notice that [Mountain Villages'] use of the Parking Island was being made under claim of right. In

> order to establish a hostile use or that use is being made under claim of right, there must be "notice to the true owner of the existence of the alleged easement." *Id.* [at 640, 539 S.E.2d at 688.]

Essentially, Mountain Villages argues that the trial court's findings of fact do not support conclusions that Mountain Villages failed to present sufficient evidence that its use of the Parking Island was not permissive and was being made under a claim of right.

¶ 37    To establish an easement by prescription, a claimant must prove that "(1) the use is adverse, hostile or under claim of right; (2) the use has been open and notorious such that the true owner had notice of the claim; (3) the use has been continuous and uninterrupted for at least twenty years; and (4) there is substantial identity of the easement claimed through the prescriptive period." *Yadkin Valley Land Co., L.L.C. v. Baker*, 141 N.C. App. 636, 639, 539 S.E.2d 685, 688 (2000) (citation omitted). "Prescriptive easements are not favored in the law, and the burden is therefore on the claiming party to prove every essential element thereof." *Id.* (citation omitted). "The law presumes that the use of a way over another's land is permissive or with the owner's consent unless the contrary appears." *Dickinson v. Pake*, 284 N.C. 576, 580, 201 S.E.2d 897, 900 (1974) (citations omitted). "A mere permissive use of a way over another's land, however long it may be continued, can never ripen into an easement by prescription." *Id.* at 581, 201 S.E.2d at 900 (citation omitted).

¶ 38        Here, the following findings of fact support the conclusion that Mountain Villages failed to prove that its use of the Parking Island was anything other than permissive:

> 7.  The subject property is described in Exhibit B as *"being that tract of land described in a deed dated February 3, 2003 to Kokopelli Village, LLC (n/k/a Mountain Villages, LLC) and recorded February 7, 2003 in Book 1178, Page 243, Jackson County Registry. . . . Also being that land identified as Tax PIN No. 7559-35-9606 as is shown in the Jackson County Tax Office"*
>
> 8.  The description of the "area taken" in Exhibit B and the "Court Map" of the subject property, generated pursuant to N.C. Gen. Stat. § 136-106, compiled on November 9, 2015, and filed with the Jackson County Clerk of Court on May 11, 2017, do[es] not include a description or any calculations for what the parties call a "Parking Island" or "Traffic Island", formed by the intersection of Aztec Drive, Old Cullowhee Road, and a short connecting road.
>
> 9.  The "Parking Island" or "Traffic Island" (hereinafter "Parking Island") was owned by Samuel R. Hopkins.
>
> 10.  Plaintiff DOT acquired a right of way to the "Parking Island" from Samuel Hopkins via a "Deed for Highway Right of Way", recorded in the Jackson County Register of Deeds on May 26, 2015, Book 2079, Pages 624-627.
>
> 11.  The DOT Right of Way Unit Review Certification, dated December 5, 2014, contains the following language in the section entitled "Extraordinary Assumptions/Limiting Conditions":
>
>> *"The subject property has benefitted from the use of a parking area that is owned by the adjacent property owner, Mr. Hopkins, and is identified as a portion of Jackson County PIN 7559-45-0855. As a result of the project, the adjacent property utilized as a parking area will no longer be available for use by the subject*

*property owner. In this instance, I have appraised the subject property under the extraordinary assumption that the area utilized for parking prior to the project was for use by the subject owner under a prescriptive easement. Note that this decision was made by the client's legal advisor, and as a result, I have utilized the extraordinary assumption that the prescriptive easement is in place as of the date of this appraisal."*

*"A portion of the subject's parking area is a gravel area that is un-marked, which makes a calculation of actual parking spaces difficult to determine. In this instance, the subject property has been appraised under the extraordinary assumption that the subject had access to a minimum of 18 parking spaces, for commercial use only, prior to the proposed project. After the project, I have estimated that the subject will have access to approximately 7 commercial parking spaces."*

12. The DOT Right of Way Unit Review Certification, dated October 4, 2017, contains the following language:

*"A Key extraordinary assumption is applicable. An 'island' formed by the intersection of Aztec Drive and Old Cullowhee Road, and a short connecting road, has been used by the owners of the subject property for many years as a parking lot. Deed information indicates that this property is actually owned by [Samuel Hopkins] . . . . However, the NC Attorney's General office has determined that a prescriptive easement exists, entitling the owner of the subject to use of this area. Thus, the analysis is based on the extraordinary assumption that the owner of the subject property has the right to use this off-site area for parking before acquisition of the right-of-way, and that this area will be eliminated after right-of-way acquisition and construction of the proposed road/bridge project."*

. . . .

16. No deeds or recorded easements were introduced as evidence showing a conveyance to [Mountain Villages] of any interest in the Parking Island.

17. There is no evidence that permission was ever sought by [Mountain Villages] to use the Parking Island or that Mr. Hopkins ever consented to or objected to [Mountain Villages'] use of the Parking Island.

18. There is no evidence that any signs were ever placed on the Parking Island restricting parking to certain guests or customers.

. . . .

20. Over the years, the public has used the Parking Island for parking and general uses not limited to the businesses operated on the subject property.

21. [Mountain Villages] presented the affidavit of Troy Burns during the hearing in an effort to establish privity with the prior owner of the subject property so [Mountain Villages] could tack successive adverse possession of the Parking Island in the aggregate for the prescriptive period of twenty years. However, the affidavit of Mr. Burns was executed one day prior to the hearing. There is no evidence that [DOT] was provided notice of [Mountain Villages'] intention to use the affidavit or the particulars of the affidavit, sufficiently in advance of the hearing so as to provide the [DOT] with a fair opportunity to prepare to meet the statement.

¶ 39     These findings show that, at a minimum, Mountain Villages failed to establish that its use of the Parking Island has been "adverse, hostile or under claim of right"; that Mountain Villages' use of the Parking Island has "been open and notorious such that the true owner had notice of the claim"; or that Mountain Villages' use of the Parking Island "has been continuous and uninterrupted for at least twenty years[.]"

*Yadkin*, 141 N.C. App. at 639, 539 S.E.2d at 688. Accordingly, the findings of fact support the trial court's conclusions of law 5 and 7, as well as the trial court's unchallenged conclusion of law 8, which concluded that Mountain Villages "has failed to meet its burden of establishing it has acquired a prescriptive easement."

## D. Judicial Estoppel

Mountain Villages argues that DOT should be judicially estopped from claiming that Mountain Villages does not have a prescriptive easement over the Parking Island. Mountain Villages asserts that DOT's pleadings contained a statement of just compensation, including compensation for the prescriptive easement, and that the pleadings are inconsistent with DOT's representation at the hearing that Mountain Villages did not own the easement.

Judicial estoppel is an equitable, gap-filling doctrine that "'seeks to protect courts, not litigants, from individuals who would play fast and loose with the judicial system,' and [it] is an inherently flexible and discretionary doctrine." *Beroth Oil Company v. N.C. Dep't of Transp.*, 256 N.C. App. 401, 417, 808 S.E.2d 488, 501 (2017) (quoting *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 26, 591 S.E.2d 870, 887 (2004)). Because "judicial estoppel protects the courts . . . , a court, even an appellate court, may raise judicial estoppel on its own motion." *Old Republic Nat'l Title Ins. Co. v. Hartford Fire Ins. Co.*, 369 N.C. 500, 506-07, 797 S.E.2d 264, 269 (2017) (quotation marks, brackets, and citations omitted).

¶ 42 Our Supreme Court has enumerated three factors "that typically inform the decision whether to apply the doctrine" of judicial estoppel in a particular case:

> First, a party's subsequent position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 28-29, 591 S.E.2d 870, 888-89 (quotation marks and citations omitted). Our appellate courts have noted that only the first factor is essential. *See Causey v. Cannon Surety, LLC*, 269 N.C. App. 134, 142, 837 S.E.2d 414, 419 (citing *Whitacre*, 358 N.C. at 29 n.7, 591 S.E.2d at 888 n.7).

¶ 43 First, as explained above in Section C(2)(a), DOT's estimated sum of just compensation is not relevant to the issue of title and interests taken by DOT. DOT's pleadings, which contained the estimated sum of just compensation for the subject property and included the prescriptive easement in the estimate under an extraordinary assumption, were not inconsistent with its position at the section 108 hearing that Mountain Villages did not have a prescriptive easement over the Parking Island.

¶ 44          The doctrine of judicial estoppel is further inapplicable in this case because DOT did not take any other subsequent position on a factual issue that was clearly inconsistent with its earlier position. *See Whitacre*, 358 N.C. at 29, 591 S.E.2d at 889. The record and exhibit evidence show that DOT's position has been that, from the time of initiation of the condemnation action, the Parking Island was not owned by Mountain Villages but was instead owned by the Hopkins. In its pleadings, DOT filed a plan sheet that shows the parcels of land around and including the Parking Island. The Hopkins are the owners of parcel 6, and the DOT's plan sheet shows that parcel 6 includes the Parking Island. DOT also filed a plat with the trial court, as required by N.C. Gen. Stat. § 136-106(c), which shows Mountain Villages' property boundaries and outlines the bounds of the areas taken by DOT. The plat does not show the Parking Island as part of Mountain Villages' property and does not indicate that Mountain Villages had any ownership interest in the Parking Island.

### III.          Conclusion

¶ 45          As there is competent evidence to support the trial court's findings of fact, and the findings of fact support the conclusions of law, the trial court did not err in determining that Mountain Villages has failed to meet its burden of establishing that it has acquired a prescriptive easement over the Parking Island. The trial court's order is affirmed.

          AFFIRMED.

Judges ARROWOOD and GORE concur.