KAREN STEINKRAUSE, Petitioner v. GEORGE TATUM, COMMISSIONER, NORTH CAROLINA DIVISION OF MOTOR VEHICLES, Respondent

No. COA08-1080

(Filed 8 December 2009)

**1. Motor Vehicles— driving while impaired—probable cause— totality of circumstances**

The trial court did not err in a driving while impaired case by concluding as a matter of law that probable cause existed for petitioner's arrest based on the nature of petitioner's single car accident and the smell of alcohol.

**2. Motor Vehicles— driving while impaired—sufficiency of findings of fact and conclusions of law—willful refusal to submit to breath test**

The trial court did not err in a driving while impaired case by its findings of fact and conclusions of law with respect to petitioner's willful refusal to submit to a breath test. Even though petitioner claimed that physical injuries not apparent to the chemical analyst made cooperation impossible, petitioner failed to follow the officer's instructions, there was evidence that petitioner was able to comply with the officer's instructions, and the trial judge, who was in a better position to determine the credibility of the witnesses, found that petitioner willfully refused.

Judge HUNTER, Jr., Robert N., dissenting.

Appeal by Petitioner from judgment entered 27 March 2008 by Judge Orlando F. Hudson, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 5 May 2009.

*George B. Currin, for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Jess D. Mekeel ,for respondent-appellee.*

WYNN, Judge.

Petitioner Karen Steinkrause[1] was arrested for driving while impaired (DWI) on 23 September 2006 based on evidence surrounding a severe one-car accident, including an officer's observation that she smelled of alcohol. Petitioner blew several times into the Intoxilyzer machine, but did not provide a sufficient breath sample; she claimed that injuries sustained during the accident made it too painful. We now affirm the trial court's determination that probable cause existed for Petitioner's arrest, and that Petitioner willfully refused to submit to a chemical analysis.

On 23 September 2006, Captain K.J. McCray of the North Carolina Highway Patrol was called to the scene of an accident off I-40 in Wake County. Arriving at the scene of the accident, he met with Trooper Kenneth Ellerbe of the North Carolina Highway Patrol who had responded first. The officers found Petitioner Steinkrause's car upside down in a ditch next to an exit ramp, where it had come to rest after having rolled several times. Trooper Ellerbe requested that she submit to a portable breath test (PBT). Petitioner successfully provided one breath sample, and Trooper Ellerbe requested that she submit to another. Petitioner was unable to provide a second sample, claiming that injuries sustained during the accident made it too painful for her to blow into the device.

Petitioner provided a written statement for Trooper Ellerbe, that states in its entirety:

My left front tire looked flat. Couldn't find gas station with air upon leaving Raleigh. Was going to stop again to check air pressure. Having an argument on phone. Car swerved. Felt I could not regain control. Swerved onto inside lane and median, and car flipped. Zero loss of consciousness. Apparently superficial lacerations to left elbow area.

---

1. Petitioner's name is spelled Steinkraus in her brief but Steinkrause in the transcript and judgment.

Captain McCray eventually took over the investigation. Trooper Ellerbe informed Captain McCray that he had smelled an odor of alcohol about Petitioner's person. Trooper Ellerbe also told Captain McCray the results of the first PBT, and that no result was obtained upon his second request. Captain McCray did not himself smell alcohol on Petitioner, but he noticed her clothes were dirty and she looked "sleepy." Based on "the collision, the damage of the vehicle and the testimony of the trooper that was there prior to [his] arrival," Captain McCray believed Petitioner had committed an implied consent offense and placed her under arrest for DWI. After her arrest, Petitioner admitted that she had been drinking prior to the accident.

Petitioner was taken to the City County Bureau of Identification, where she was requested to submit to a chemical analysis of her breath. Captain McCray, a certified chemical analyst, advised Petitioner of her rights, and Petitioner agreed to take the Intoxilyzer test. Captain McCray told Petitioner to blow steadily into the mouthpiece.

According to Captain McCray's testimony, Petitioner attempted to blow four times. Petitioner would blow a little bit, say that it hurt her neck, and then stop. Captain McCray testified that he believed Petitioner was physically able to provide a sample of her breath. He also testified that he did not observe anything that made him believe Petitioner was not making a valid attempt. Captain McCray registered Petitioner as a willful refusal at 6:17 p.m.

Petitioner was notified by the Division of Motor Vehicles ("DMV") that her driver's license was suspended for refusal to submit to a chemical analysis pursuant in N.C. Gen. Stat. § 20-16.2. Petitioner contested the revocation and requested a hearing. Petitioner was granted a hearing before the DMV on 8 December 2006. The DMV sustained the revocation of Petitioner's driver's license. Petitioner requested judicial review of the DMV's decision on 13 December 2006. The hearing was conducted during the 4 March 2008 Civil Session of the Superior Court in Wake County. The court affirmed the revocation of Petitioner's driver's license, entering judgment on 27 March 2008. This appeal followed.

On appeal to this Court, the trial court's Findings of Fact are conclusive if supported by competent evidence, even though there may be evidence to the contrary. *Gibson v. Faulkner*, 132 N.C. App. 728, 732-33, 515 S.E.2d 452, 455 (1999). We review whether the trial court's

Findings of Fact support its conclusions of law *de novo*. *State v. Campbell*, 188 N.C. App. 701, 704, 656 S.E.2d 721, 724 (2008).

Petitioner argues on appeal that the trial court erred by (I) concluding as a matter of law that she was arrested based upon reasonable grounds, and (II) making Findings of Fact and concluding that she willfully refused to submit to a test of her breath.

I.

[1] Petitioner first contends that the trial court erred in concluding as a matter of law that she was arrested based upon reasonable grounds. Because the totality of the circumstances supports a finding of probable cause, we disagree.

This appeal arises from a revocation proceeding under N.C. Gen. Stat. § 20-16.2 which authorizes a civil revocation of the driver's license when a driver has willfully refused to submit to a chemical analysis. That statute provides for a civil hearing at which the driver can contest the revocation of her driver's license. The hearing is limited to consideration of whether:

(1) The person was charged with an implied-consent offense or the driver had an alcohol concentration restriction on the drivers license pursuant to G.S. 20-19;

(2) The charging officer had reasonable grounds to believe that the person had committed an implied-consent offense or violated the alcohol concentration restriction on the drivers license;

(3) The implied-consent offense charged involved death or critical injury to another person, if this allegation is in the affidavit;

(4) The person was notified of the person's rights as required by subsection (a); and

(5) The person willfully refused to submit to a chemical analysis upon the request of the charging officer.

N.C. Gen. Stat. § 20-16.2(d)(2005).

A civil revocation hearing is not a criminal prosecution. This court has recognized that "[t]he administrative hearing referred to in N.C. Gen. Stat. § 20-16.2(d) . . . is in the nature of a civil proceeding." *Gibson*, 132 N.C. App. at 734, 515 S.E.2d at 455. Elsewhere, we have determined that "the quantum of proof necessary to establish probable cause to arrest in criminal driving while impaired cases and civil

license revocation proceedings, notwithstanding the different burdens on the remaining elements, is virtually identical." *Brower v. Killens*, 122 N.C. App. 685, 690, 472 S.E.2d 33, 37 (1996), *disc. review improvidently allowed*, 345 N.C. 625, 481 S.E.2d 86 (1997). Thus, reasonable grounds in a civil revocation hearing means probable cause, and is to be determined based on the same criteria. *See Rock v. Hiatt*, 103 N.C. App. 578, 584, 406 S.E.2d 638, 642 (1991).

A determination of probable cause depends on the totality of the circumstances. *Maryland v. Pringle*, 540 U.S. 366, 371, 157 L. Ed. 2d 769, 773 (2003). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Id.* at 371, 157 L. Ed. 2d at 775 (quoting *U.S. v. Ornelas*, 517 U.S. 690, 696, 134 L. Ed. 2d 911, 919 (1996)). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 76 L. Ed. 2d 527, 552 n.13 (1983).

Petitioner does not contest that there was sufficient evidence to support part of the trial court's Finding of Fact No. 3: that Petitioner was involved in a severe one car accident. Nor does Petitioner contest the sufficiency of the evidence regarding Finding of Fact No. 6: that Trooper Ellerbe conveyed to Trooper McCray that Petitioner had an odor of alcohol on or about her person. Petitioner argues, however, that these findings do not support the trial court's conclusion that Captain McCray had reasonable grounds to arrest Petitioner.

Regarding the smell of alcohol, an arresting officer is permitted to base his determination of reasonable grounds on information given by one known to him to be reasonably reliable. *Melton v. Hodges*, 114 N.C. App. 795, 798, 443 S.E.2d 83, 85 (1994).

In this case, an officer on the scene smelled an odor of alcohol about the Petitioner. That the arresting officer did not himself make the same observation does not diminish its weight, since a probable cause determination may be based upon the hearsay of a reliable witness. *Id.*; *see also State v. Leonard*, 87 N.C. App. 448, 454, 361 S.E.2d 397, 400 (1987) ("The direct personal observation by the officer/ affiant or his fellow officers is plainly a reliable basis for issuance of a warrant."), *appeal dismissed and disc. review denied*, 321 N.C. 746, 366 S.E.2d 867 (1988). The smell of alcohol could therefore contribute to the officer's determination of probable cause, and supports

the trial court's determination that Petitioner was arrested based upon reasonable grounds.

The second factor supporting a determination of probable cause is the nature of the car accident itself. Petitioner is correct to assert that the car accident alone does not support a finding of probable cause. As this Court observed in *State v. Hollingsworth*, the surrounding evidence must also be considered:

> Involvement in an automobile accident cannot be said *per se* to provide probable cause sufficient to order a blood alcohol test, but defendant's involvement was due first to a miscalculation in judging the distance between his automobile and [another], then to an inability to prevent his high-speed crossing of the median. These circumstances, known to [the officer] before he ordered the blood drawn, *indicated an impairment of coordination.* [The officer] also smelled the odor of alcohol from the crushed passenger side of defendant's Chevrolet.

*State v. Hollingsworth*, 77 N.C. App. 36, 44, 334 S.E.2d 463, 468 (1985) (emphasis added).

In this case, the record shows that Captain McCray observed the extensive damage to the vehicle at the scene of the accident and could have concluded that it resulted from the driver's inability to prevent her high-speed swerving off the road. The nature of this accident could indicate "an impairment of coordination" of the part of Petitioner. *Id.* Captain McCray was entitled to consider the severity and circumstances of the crash among the totality of the circumstances used to determine probable cause.

The facts of this case resemble *Richardson v. Hiatt*, in which that petitioner was also involved in a one-car accident. 95 N.C. App. 196, 381 S.E.2d 866, *reh'g granted and modified on other grounds*, 95 N.C. App. 780, 384 S.E.2d 62 (1989). The petitioner in that case lost control of his vehicle, it went off the road and ended up in a ditch. The accident happened "when driving conditions were excellent. It occurred on a clear day in the middle of the afternoon." *Id.* at 200, 381 S.E.2d at 868. Petitioner claimed that he fell asleep at the wheel. The only other evidence used to establish probable cause was the smell of alcohol. On appeal, this Court concluded that the officer had probable cause to arrest for DWI. "The evidence surrounding the accident and petitioner's reason for its occurrence, coupled with the strong odor of alcohol detected from him, gave [the officer] reasonable grounds to arrest petitioner for impaired driving." *Id.*

It is true that in this case, unlike *Richardson*, the trial court did not make any Findings of Fact regarding the driving conditions on the day of the crash. But probable cause to arrest requires only a fair probability of criminal activity; it does not require proof beyond a reasonable doubt, "it does not demand any showing that [the officer's] belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742, 75 L. Ed. 2d 502, 513-14 (1983), *see also Church v. Powell*, 40 N.C. App. 254, 252 S.E.2d 229 (1979). It is the fact and severity of the one-car accident coupled with some indication of alcohol consumption on the part of the driver that is determinative of probable cause to arrest.

Accordingly, we hold that the nature of Petitioner's car accident and the smell of alcohol adequately support the trial court's Conclusion of Law that Petitioner was arrested based on reasonable grounds.

II

**[2]** Petitioner next argues that the trial court erred in its Findings of Fact and Conclusions of Law with respect to Petitioner's willful refusal to submit to a test of her breath. Because there was competent evidence presented to the trial court that Petitioner willfully failed to follow the officer's instructions, we disagree.

Refusal has been defined by our Supreme Court as "the declination of a request or demand, or the omission to comply with some requirement of law, as the result of a positive intention to disobey." *Joyner v. Garrett, Comr. of Motor Vehicles*, 279 N.C. 226, 233, 182 S.E.2d 553, 558, *reh'g denied*, 279 N.C. 397, 183 S.E.2d 241 (1971) (quoting Black's Law Dictionary, 4th Ed.). Indeed, a "willful refusal" occurs whenever a driver:

> (1) is aware that he has a choice to take or to refuse to take the test; (2) is aware of the time limit within which he must take the test; (3) voluntarily elects not to take the test; and (4) knowingly permits the prescribed thirty-minute time limit to expire before he elects to take the test.

*Etheridge v. Peters*, 301 N.C. 76, 81, 269 S.E.2d 133, 136 (1980). "Obviously, one may refuse the test by inaction as well as by words." *Mathis v. North Carolina Div. of Motor Vehicles*, 71 N.C. App. 413, 415, 322 S.E.2d 436, 438 (1984).

As the State points out in its brief, Petitioner has not assigned error to Findings of Fact Nos. 19 through 22, and these findings are

therefore binding on appeal. *Campbell*, 188 N.C. App. 701, 656 S.E.2d 721, 724. These findings establish that Petitioner did not provide a valid breath sample to the Intoxilyzer instrument; on several attempts Petitioner stopped blowing after one second and did not provide a continuous sample of breath as instructed; and Petitioner was provided numerous opportunities to provide a valid sample.

Petitioner challenges Finding of Fact No. 23 that Trooper McCray did not observe any physical or medical conditions which would have precluded Petitioner from providing a valid sample of breath. Petitioner contends that the evidence was undisputed that Petitioner was suffering from injuries sustained in her car accident. Petitioner also challenges Finding of Fact No. 24 that Petitioner did not complain of a neck injury until she was at the Intoxilyzer room. Petitioner contends that the State's own evidence indicates that Petitioner complained of neck injury at the scene of the accident.

The essence of Petitioner's objection to Findings of Fact Nos. 23 and 24 is the contention that the trial court did not adequately appreciate Petitioner's injuries. Petitioner does not object to that part of Finding of Fact No. 24 in which the trial court recognized that Petitioner complained that her neck hurt, and that existing neck pains were worsened by the accident. Insofar as this finding is supported by competent evidence, Petitioner can not complain that the trial court did not appreciate her injuries. Captain McCray testified at the hearing that Petitioner appeared to be in good health. This is competent evidence to support Finding of Fact No. 23.

The evidence was contradictory with regard to when Petitioner first complained of the neck injury. Captain McCray testified at one point that Petitioner started complaining of her neck injury "[a]fter the fourth time [Petitioner attempted to blow] and thereafter;" but later he testified that he had not performed field sobriety tests earlier at the scene of the accident because Petitioner complained of her neck injury. As noted above, competent evidence does not mean uncontradicted evidence. Although the testimony was not entirely consistent, there was competent evidence to support Finding of Fact No. 24.

Petitioner also challenges Finding of Fact No. 25 that Trooper McCray would not have requested Petitioner to submit to a test of her breath had she been physically unable to do so. This Finding of Fact is supported by the following excerpt from the transcript:

Q: If a person is not physically able to provide a sample of— sample on an intoxilyzer instrument, are you going to mark them as a willful refusal?

[Captain McCray]: No, sir.

Q: Did you believe the Petitioner in this case was physically able to provide a sample?

[Captain McCray]: Yes, sir.

Finding of Fact No. 25 is supported by competent evidence.

Petitioner also challenges Finding of Fact No. 26 that Trooper McCray believed Petitioner was physically able to provide a sample of breath. Insofar as Petitioner objects to the admissibility of Captain McCray's belief, this issue was not preserved for appeal. Insofar as Petitioner objects to the Finding of Fact itself, this Finding of Fact is fully supported by the portion of the transcript excerpted above.

Finally, Petitioner challenges Finding of Fact No. 27 that Petitioner did not follow the instructions of Trooper McCray in providing a sample of her breath for chemical analysis. Petitioner concedes that she "ultimately did not provide a valid sample of her breath." Petitioner objects, however, "[t]o the extent that Finding of Fact No. 27 implies that the Petitioner was willfully not following the instructions of Trooper McCray . . . ." This argument is more appropriately directed at the trial court's Conclusions of Law, and is dealt with as such.

Petitioner's argument that the trial court erred in not making additional Findings of Fact is without merit. "It is immaterial that the evidence may support a finding not made by the superior court. Our review is limited to whether competent evidence supports the findings that were made." *Ferguson v. Killens*, 129 N.C. App. 131, 135, 497 S.E.2d 722, 724, *disc. review denied and appeal dismissed*, 348 N.C. 496, 510 S.E.2d 383 (1998). *See also Tolbert v. Hiatt*, 95 N.C. App. 380, 385, 382 S.E.2d 453, 456 (1989) ("[T]he trial court need not recite every evidentiary fact presented at the hearing, but must only make specific findings on the ultimate facts established by the evidence that are determinative of the questions raised in the action and essential to support its conclusions.").

Petitioner's real objection concerns the trial court's Conclusion of Law that she willfully refused to submit to a test of her breath.

Petitioner contends that "[e]ven if left undisturbed, the trial court's Findings of Fact Nos. 19 through 27 fail to adequately support the Conclusion of Law . . . ." Petitioner asserts that before the trial court could conclude that there was a willful refusal, it was required to find "a positive intention to disobey" the charging officer and "a voluntary decision to evade the test." *Joyner*, 279 N.C. at 233, 182 S.E.2d at 558. We note that the State's burden of proof in this civil action was to establish Petitioner's willful refusal by a preponderance of the evidence. *Powers v. Tatum*, —— N.C. App. ——, ——, 676 S.E.2d 89, 93, *disc. review denied*, 363 N.C. 583, 681 S.E.2d 784 (2009).

The facts of this case are similar to those in *Tedder v. Hodges*, 119 N.C. App. 169, 457 S.E.2d 881 (1995). The Petitioner in that case was arrested for DWI and taken to a breathalyzer room where he agreed to submit to a chemical analysis. The chemical analyst observed the mandatory waiting period and then requested that Petitioner blow into the machine. "[P]etitioner blew into the machine five or six times, but he never blew long enough for a sufficient sample." *Id.* at 172, 457 S.E.2d at 883. The officer wrote Petitioner up as a refusal, and Petitioner's license was revoked pursuant to N.C. Gen. Stat. § 20-16.2. "Petitioner subsequently was treated at Forsyth Memorial Hospital for an injury to his nose and for chest congestion." *Id.*

Petitioner in *Tedder* petitioned the superior court for a hearing regarding the revocation of his driver's licence. Petitioner testified that "he could not blow into the machine long enough to provide an adequate sample because he had a history of bronchitis and had been in a fight earlier on the day he tried to blow into the machine." *Id.* The officer testified that "she could not tell if petitioner physically could not blow into the machine or if he was intentionally not blowing." *Id.* at 175, 457 S.E.2d at 885. On review, this Court held that the evidence showed petitioner's failure to follow the instructions of the breathalyzer operator. "Failure to follow the instructions of the breathalyzer operator is an adequate basis for the trial court to conclude that petitioner willfully refused to submit to a chemical analysis." *Id.* (citing *Bell v. Powell*, 41 N.C. App. 131, 135, 254 S.E.2d 191, 194 (1979)).

Petitioner in *Tedder* argued further that the trial court erred in its refusal to enter judgment on his behalf because the State failed to establish a willful refusal. Petitioner maintained that he attempted to provide an adequate breath sample but could not because of his bronchitis and an injured nose. *Id.*

While this evidence could have led the trial court to determine that Petitioner did not willfully refuse to blow into the breathalyzer machine, we conclude that there was still competent evidence to support the trial court's conclusion that petitioner willfully refused. When the trial judge is the trier of fact, "he has the duty to pass upon the credibility of the witnesses who testify. He decides what weight shall be given to the testimony and the reasonable inferences to be drawn therefrom. The appellate court cannot substitute itself for the trial judge in this task."

*Id.* at 176, 457 S.E.2d at 885 (quoting *General Specialities Co. v. Nello L. Teer Co.*, 41 N.C. App. 273, 275, 254 S.E.2d 658, 660 (1979)).

In the present case, Petitioner does not dispute Finding of Fact No. 20:

20. With the request to provide a valid sample of breath, the Petitioner placed the mouthpiece into her mouth and blew into the Intoxilyzer instrument for one second and stopped blowing. The Petitioner did not provide a continuous sample of breath as instructed by Trooper McCray.

Thus, Petitioner failed to follow the officer's instructions, and—nothing else appearing—the officer was justified in writing up Petitioner as a refusal. *Bell v. Powell*, 41 N.C. App. 131, 135, 254 S.E.2d 191, 194 (1979). Petitioner contends, however, that the trial court's Conclusion of Law is contrary to the uncontradicted evidence indicating that she did not *willfully* refuse to submit to the test.

While there may be uncontradicted evidence that Petitioner was involved in a severe accident, and that she complained of a neck injury both at the scene and in the breathalyzer room, there is also evidence that Petitioner was not unable to comply with the officer's instructions. She provided a sample of her breath to Trooper Ellerbe when he asked her to submit to a PBT at the scene of the accident. Captain McCray did not observe any coughing, wheezing, or shortness of breath on the part of Petitioner. Finally, Captain McCray testified that he believed Petitioner was physically able to provide a valid sample to the Intoxilyzer.

While Petitioner's injuries were perhaps more recent than those of petitioner in *Tedder*, the issues raised by petitioners in both cases are the same. In both cases, petitioners agreed to submit to a test of their breath and failed to maintain sufficient pressure to provide a valid sample. In both cases, petitioners claimed that physical injuries

not apparent to the chemical analyst made cooperation impossible. The argument in *Tedder* was perhaps more compelling since there is no evidence that the petitioner in that case had already provided one valid breath sample. *See Tedder*, 119 N.C. App. at 171, 457 S.E.2d at 883 (noting only that petitioner performed poorly on several roadside sobriety tests).

On the basis of *Tedder*, we hold that the trial judge in this case, who was in a better position to determine the credibility of the witnesses, did not err in concluding as a matter of law that Petitioner willfully refused to submit to a test of her breath. "[T]he trial court's conclusion of law regarding petitioner's willful refusal is supported by adequate findings and by competent evidence in the record." *Tedder*, 119 N.C. App. at 177, 457 S.E.2d at 886.

Affirmed.

Judge JACKSON concurs.

Judge HUNTER, Jr. dissents in a separate opinion.

HUNTER, JR., Robert N., Judge, dissenting.

*Facts*

The following evidence was presented to the trial court at the revocation hearing: On the afternoon of 23 September 2006, Karen Steinkrause ("petitioner") was returning to Wilmington from Raleigh and stopped to have lunch before driving home. At lunch, petitioner had a salad and approximately one glass of wine. Prior to leaving Raleigh, petitioner noticed that the left front tire of her vehicle did not look right and decided to find a place where she could check her tire pressure. As petitioner merged onto Interstate Highway 40, her vehicle started pulling to the left. Petitioner subsequently lost control of her vehicle and it rolled several times before landing upside down in a ditch next to the interstate. Petitioner remained hanging upside down until the rescue personnel arrived, and during that time felt "electric shock" sensations in her neck and arm.

Petitioner suffered lacerations to her left arm as a result of the accident and was concerned about her neck, because she had previously suffered neck injuries from falling off horses, and believed that the accident had exacerbated those injuries. Petitioner, who has a background in nursing, did not agree with how the res-

cue personnel dressed the wounds on her arm, so she dressed the wounds herself.

At approximately 5:00 p.m., Trooper Kenneth Ellerbe ("Trooper Ellerbe") of the North Carolina Highway Patrol was called to the scene of petitioner's car accident. Upon his arrival, he interviewed petitioner, and she voluntarily made the following written statement:

> My left front tire looked flat. . . . Was going to stop again to check air pressure. Having an argument on phone. Car swerved. Felt I could not regain control. Swerved onto inside lane and median, and car flipped. Zero loss of consciousness. Apparently superficial lacerations to left elbow area.

Trooper Ellerbe asked petitioner to submit to a portable breath test ("PBT"). When petitioner attempted to blow into the PBT, she "felt like electricity was going through [her] neck and [her] arms." She told Trooper Ellerbe that "it hurt to bend [her] neck" and that "it hurt to blow" into the PBT. Petitioner successfully provided one breath sample on PBT, but failed to provide a second sample.

Shortly after Trooper Ellerbe administered the PBT, Trooper McCray took over the investigation. Before leaving the scene of the accident, Trooper Ellerbe told Trooper McCray the results of petitioner's first PBT, and that no result was obtained following his second request. Trooper Ellerbe also conveyed to Trooper McCray that he had smelled alcohol on or around petitioner. The results of the PBT were not admitted into evidence at the hearing before the trial court, and therefore, were not considered in its "reasonable grounds" determination.

Trooper McCray testified that he did not smell alcohol on petitioner, nor did he observe any slurred speech or difficulty in communicating. He noticed that petitioner's clothes were dirty as a result of having to be pulled out of her car, and made the following observations of petitioner in his report: "clothing, dirty and sleepy." He also noted in his report that petitioner "claimed [her] neck was hurt." Based on "the collision, the damage of the vehicle and the testimony of Trooper Ellerbe prior to arrival," Trooper McCray believed petitioner had committed an implied consent offense and placed her under arrest for driving while impaired.

## Analysis

Petitioner contends that the trial court erred in concluding as a matter of law that she was arrested "based upon reasonable

grounds." Petitioner argues that the conclusion was not supported by the trial court's findings of fact. I agree that petitioner was not arrested on reasonable grounds, and therefore, pursuant to N.C. Gen. Stat. § 20-16.2 (2007), I believe her driver's license should not be revoked. *See* N.C.G.S. § 20-16.2.

Because we do not have evidence of the result of petitioner's PBT, the only factual findings regarding Trooper McCray's probable cause to arrest petitioner concerns her car accident and Trooper Ellerbe's statement that he had detected an odor of alcohol. Based on the totality of the circumstances, there appears to be insufficient factual findings to support the conclusion that petitioner was arrested based upon reasonable grounds.

While involvement in an automobile accident can contribute to the totality of the circumstances, it is not sufficient *per se* to provide probable cause of an implied consent offense. *State v. Hollingsworth*, 77 N.C. App. 36, 44, 334 S.E.2d 463, 468 (1985). In *Richardson v. Hiatt*, 95 N.C. App. 196, 381 S.E.2d 866 (1989), the petitioner was involved in a one-car accident at approximately 3:00 p.m, when his vehicle went off the road into a ditch. *Id.* at 197, 381 S.E.2d at 867. On appeal, this Court concluded that probable cause existed to arrest the petitioner, because the accident "occurred when driving conditions were excellent . . . on a clear day in the middle of the afternoon." The petitioner told the arresting officer that he had fallen asleep at the wheel, and the officer detected a strong odor of alcohol on the petitioner. *Id.* at 200, 381 S.E.2d at 868.

The petitioner in *Moore v. Hodges*, 116 N.C. App. 727, 449 S.E.2d 218 (1994), was also involved in a one-car accident. *Id.* at 730, 449 S.E.2d at 220. In that case, we held that the facts were sufficient to support a finding of probable cause given that the petitioner admitted that the accident was her fault, she had been drinking liquor earlier that evening, she smelled of alcohol, she had mumbled speech, and registered .10 or higher on the alcosensor. *Id.*; *see also State v. Tedder*, 169 N.C. App. 446, 448-51, 610 S.E.2d 774, 776-77 (2005) (finding substantial evidence of impairment where officer smelled alcohol, the defendant swayed when standing, slurred her speech, and was unable to recite the alphabet); *State v. Thomas*, 127 N.C. App. 431, 434, 492 S.E.2d 41, 43 (1997) (holding that there was probable cause to justify the defendant's arrest due to his disorderly appearance, red glassy eyes, strong odor of alcohol, and inability to produce a driver's license or registration); *State v. Rogers*, 124 N.C. App. 364, 369, 477 S.E.2d 221, 223-24 (1996) (finding probable cause where the police

officer smelled a strong odor of alcohol on the defendant and the defendant had a blood alcohol concentration of .13).

Here, petitioner contends that the undisputed evidence at trial shows that her car accident was caused by her left front tire, and that this mechanical failure was not indicative of any fault or impairment on her part. However, such evidence is not included in the trial court's findings. Furthermore, "[p]robable cause exists if the facts and circumstances *at that moment* within the charging officer's knowledge and of which the officer had reasonably trustworthy information are such that a prudent man would believe that the suspect had committed or was committing an offense." *Moore*, 116 N.C. App. at 730, 449 S.E.2d at 220 (emphasis added). The trial court made the following factual findings about petitioner's accident:

1. Around 5:00 p.m. on September 26th, 2006, Trooper K.J. McCray of the North Carolina Highway Patrol was called to the scene of an accident off of I-40 in Wake County.

2. Upon [their] arrival . . . [t]he Troopers discussed the wreck and the driver of the vehicle, the Petitioner.

3. Petitioner was involved in a single car accident, wherein the vehicle she operated drove off the side of the entrance ramp to I-40. The vehicle rolled several times until it came to a stop in a ditch off of the side of the interstate.

Unlike *Richardson* and *Moore*, the trial court made no factual findings regarding the weather or driving conditions nor did it find that the accident was petitioner's fault.

Respondent claims that we should infer that the driving conditions were ordinary, since the factual findings did not state otherwise. This is an impermissible speculation, which cannot be used to support probable cause. Moreover, because petitioner did not admit to consuming alcohol until after her arrest, Finding of Fact No. 9 cannot be considered in our reasonable grounds determination. There are no findings about a positive result of testing for alcohol, nor are there factual findings that petitioner exhibited signs of alcohol use such as slurred speech or difficulty communicating.

The only other factual finding that is relevant to the conclusion is that "Trooper Ellerbe conveyed to Trooper McCray that the Petitioner had an odor of alcohol on or about her person." Contrary to the cases discussed above, Trooper McCray did not smell alcohol on petitioner,

but was told by Trooper Ellerbe that Trooper Ellerbe had detected an odor of alcohol. Respondent is correct that an arresting officer is permitted to base his determination of reasonable grounds "upon information given to the officer by another, the source of the information being reasonably reliable[.]" *Melton v. Hodges*, 114 N.C. App. 795, 798, 443 S.E.2d 83, 85 (1994). Given the circumstances of this case, we recognize that Trooper McCray did not detect an odor of alcohol on petitioner at any point in his investigation.

Trooper McCray had a sufficient opportunity to observe petitioner independently and corroborate Trooper Ellerbe's information. The fact that Trooper McCray failed to detect an odor of alcohol on petitioner, even after Trooper Ellerbe had told him that he had, weakens the reliability of Trooper Ellerbe's observation. While the probable cause standard may be incapable of precise definition, in light of the evidence presented in this case, it is difficult to say a reasonably prudent or cautious person would suspect that petitioner was driving while intoxicated.

Trooper McCray's second-hand account of an odor of alcohol, which he was unable to independently corroborate after sufficient opportunity, in combination with a car accident is not sufficient to support a finding of probable cause. Thus, in my opinion, the trial court erred in its conclusion that petitioner was arrested based upon reasonable grounds.

## Conclusion

Because I believe the trial court erred in concluding that there were reasonable grounds to arrest petitioner for an implied consent offense, her driver's license should not be revoked under N.C. Gen. Stat. § 20-16.2. *See* N.C. Gen. Stat. § 20-16.2. Accordingly, I respectfully dissent.