*780
 
 TYSON, Judge.
 

 *428
 

 I. Procedural Background
 

 Wayne T. Brackett, Jr. ("Petitioner") filed a complaint against Kelly J. Thomas, Commissioner of the North Carolina Division of Motor Vehicles, ("Respondent") on 19 January 2016. Petitioner alleged he was arrested and charged with driving while impaired on 13 August 2015. Petitioner further alleged "[Respondent] notified Petitioner that effective January 18, 2016, [P]etitioner's driving privileges were to be suspended and revoked based on a refusal to submit to a chemical test."
 

 Petitioner requested an administrative hearing before the Division of Motor Vehicles ("DMV"), which was conducted on 7 January 2016. The DMV administrative hearing officer upheld the suspension of Petitioner's driving privileges. Petitioner thereafter filed a petition for a hearing in superior court, pursuant to
 
 N.C. Gen. Stat. §§ 20-16.2
 
 and 20-25 (2015).
 

 *429
 
 The superior court heard Petitioner's petition on 6 June 2016 and reversed the decision of the DMV, holding "[t]he record does not support the conclusion under
 
 N.C. Gen. Stat. § 20-16.2
 
 (d)(5)." Petitioner was later convicted of the underlying charge of impaired driving. Respondent appeals and argues the superior court erred in reversing the administrative decision of the DMV hearing officer. We affirm.
 

 II. Statement of Jurisdiction
 

 Jurisdiction lies in this Court as an appeal of a final judgment of a superior court entered upon review of an administrative agency pursuant to N.C. Gen. Stat. § 7A-27(b)(1).
 

 III. Standard of Review
 

 On appeal from a DMV hearing, the superior court sits as an appellate court and determines "whether there is sufficient evidence in the record to support the Commissioner's findings of fact and whether the conclusions of law are supported by the findings of fact and whether the Commissioner committed an error of law in revoking the license."
 
 N.C. Gen. Stat. § 20-16.2
 
 (e) (2015). This Court reviews the superior court's decision to " '(1) determin[e] whether the trial court exercised the appropriate scope of review and, if appropriate, (2) decid[e] whether the court did so properly.' "
 
 Johnson v. Robertson
 
 ,
 
 227 N.C.App. 281
 
 , 286-87,
 
 742 S.E.2d 603
 
 , 607 (2013) (quoting
 
 ACT-UP Triangle v. Comm'n for Health Servs.
 
 ,
 
 345 N.C. 699
 
 , 706,
 
 483 S.E.2d 388
 
 , 392 (1997) ).
 

 "The standard of review for an appellate court upon an appeal from an order of the superior court affirming or reversing an administrative agency decision is the same standard of review as that employed by the superior court."
 
 Dorsey v. UNC-Wilmington
 
 ,
 
 122 N.C.App. 58
 
 , 62-63,
 
 468 S.E.2d 557
 
 , 560 (1996) (citation omitted). We apply the same standard of review required by
 
 N.C. Gen. Stat. § 20-16.2
 
 (e) for reviewing a DMV decision to revoke a petitioner's driving privileges for a willful refusal to submit to chemical analysis for an implied-consent charge. On appeal, "there is a presumption in favor of regularity and correctness in proceedings in the trial court with the burden on the appellant to show error."
 
 L. Harvey & Son Co. v. Jarman
 
 ,
 
 76 N.C.App. 191
 
 , 195-96,
 
 333 S.E.2d 47
 
 , 50 (1985) (citing
 
 In re Moore
 
 ,
 
 306 N.C. 394
 
 ,
 
 293 S.E.2d 127
 
 (1982),
 
 app. dism.
 
 ,
 
 459 U.S. 1139
 
 ,
 
 103 S.Ct. 776
 
 ,
 
 74 L.Ed.2d 987
 
 (1983) ).
 

 IV. Analysis
 

 Respondent argues the superior court erred in reversing the DMV's decision. The Commissioner asserts the agency record contains substantial evidence to support the findings of fact, and the findings of fact
 
 *430
 
 support the hearing officer's conclusion that Petitioner willfully refused to submit to chemical analysis. We disagree.
 

 This appeal arises from a revocation proceeding under
 
 N.C. Gen. Stat. § 20-16.2
 
 , "which authorizes a civil revocation of the driver's license when a driver has willfully refused to submit to a chemical analysis."
 
 Steinkrause v. Tatum
 
 ,
 
 201 N.C.App. 289
 
 , 292,
 
 689 S.E.2d 379
 
 , 381 (2009),
 
 aff'd per curiam
 
 ,
 
 364 N.C. 419
 
 ,
 
 700 S.E.2d 222
 
 (2010).
 
 N.C. Gen. Stat. § 20-16.2
 
 "provides for a civil hearing at which the driver can contest the revocation of her driver's license."
 

 Id.
 

 at 292
 
 ,
 
 689 S.E.2d at 381
 
 .
 

 *781
 
 Pursuant to
 
 N.C. Gen. Stat. § 20-16.2
 
 (d), the hearing is limited to consideration of whether:
 

 (1) The person was charged with an implied-consent offense or the driver had an alcohol concentration restriction on the drivers license pursuant to G.S. 20-19 ;
 

 (2) A law enforcement officer had reasonable grounds to believe that the person had committed an implied-consent offense or violated the alcohol concentration restriction on the drivers license;
 

 (3) The implied-consent offense charged involved death or critical injury to another person, if this allegation is in the affidavit;
 

 (4) The person was notified of the person's rights as required by subsection (a); and
 

 (5) The person willfully refused to submit to a chemical analysis.
 

 N.C. Gen. Stat. § 20-16.2
 
 (d) (2015).
 

 Respondent argues substantial evidence in the record supports the findings of fact in the DMV's decision, which in turn supports the DMV's conclusion of law. The superior court reviewed the record and the transcript of the DMV's administrative hearing and heard arguments from both parties.
 

 In its order reversing the DMV's decision, the superior court found "[t]he record does not support the conclusion under
 
 N.C. Gen. Stat. § 20-16.2
 
 (d)(5). Therefore, the Hearing Officer should not have found that the petitioner willfully refused to submit to a chemical analysis of his breath." The superior court's order does not set out the standard of review required by
 
 N.C. Gen. Stat. § 20-16.2
 
 (e), and does not explain
 
 *431
 
 which of the agency's fact findings were unsupported. The order does not state what standard of review was used by the superior court.
 

 However, as our Supreme Court held in
 
 Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjust.
 
 ,
 
 355 N.C. 269
 
 ,
 
 559 S.E.2d 547
 
 (2002), "an appellate court's obligation to review a superior court order for errors of law ... can be accomplished by addressing the dispositive issue(s) before the agency and the superior court without examining the scope of review utilized by the superior court."
 

 Id.
 

 (adopting the dissenting opinion in
 
 146 N.C.App. 388
 
 , 392,
 
 552 S.E.2d 265
 
 , 268 (2001) (Greene, Judge, dissenting)). After review of the record and transcripts, we consider the issue under the applicable statutory standard of review, without remanding the case to the superior court.
 

 Respondent argues substantial evidence in the record supports the findings of fact, which in turn supports the DMV's conclusion of law that Petitioner willfully refused to submit to a chemical analysis. The DMV Hearing Officer made the following findings of fact in his order, which upheld the revocation of Petitioner's driver's license:
 

 1. On August 13, 2015, Officer Brent Kinney, Guilford County Sheriff's Office, was stationary in the Food Lion parking lot at 7605 North NC Hwy 68 when he observed the petitioner and a female walking to the connecting parking lot of a bar, Stoke Ridge, between 9:30-9:40 [p.m.]. He noted the petitioner had a dazed appearance and was unsure on his feet.
 

 2. Officer Brent Kinney observed the petitioner enter the driver's seat of a gold Audi, back out of the parking space, and quickly accelerate to about 26 mph in the Food Lion parking [lot].
 

 3. Officer Brent Kinney got behind the petitioner until the petitioner stopped in the parking lot. At that point[,] Officer Brent Kinney observed both doors open and the petitioner and the female exit the vehicle.
 

 4. Officer Brent Kinney lost sight of the vehicle when he exited the parking lot. Then he got behind the vehicle when it exited the parking lot.
 

 5. Officer Brent Kinney observed the gold Audi cross the yellow line twice and activated his blue lights and siren.
 

 6. The female was driving and Officer Brent Kinney determined she was not impaired.
 

 *432
 
 7. Officer Brent Kinney detected a strong odor of alcohol on the petitioner, whom he saw driving in the PVA of Food Lion and observed he had slurred speech, glassy eyes and was red-faced.
 

 8. The petitioner put a piece of candy in his mouth even after Officer Brent Kinney told him not to do so. He subsequently
 
 *782
 
 removed the piece of candy when asked to do so.
 

 9. Officer Brent Kinney asked the petitioner to submit to the following tests: 1) Recite alphabet from E-U-Petitioner recited E, F, G, H, I, J, K, L, M, N, O, P[,] and stopped; and 2) Recite numbers backwards from 67-54-Petitioner recited 67, 66, 65, 4, 3, 2, 1, 59, 8, 7, 6, 5, 4, 3, 2, 1.
 

 10. Officer Brent Kinney arrested the petitioner, charging him with driving while impaired, and transported him to the Guilford County jail control for testing.
 

 11. Officer Brent Kinney, a currently certified chemical analyst with the Guilford County Sheriff's Office, read orally and provided a copy of the implied consent rights at 10:30 [p.m.] The petitioner refused to sign the rights form and did not call an attorney or witness.
 

 12. Officer Brent Kinney explained and demonstrated how to provide a sufficient sample of air for the test.
 

 13. Officer Brent Kinney requested the petitioner submit to the test at 10:49 [p.m.] The petitioner did not take a deep breath as instructed and faked blowing as the instrument gave no tone and the gauge did not move, indicating no air was being introduced.
 

 14. Officer Brent Kinney warned the petitioner that he must blow as instructed or it would be determined he was refusing the test and explained again how to provide a sufficient sample.
 

 15. The petitioner made a second attempt to submit to the test. This time he did take a breath but then gave a strong puff and then stopped; and then gave a second strong puff and stopped.
 

 16. The petitioner's second attempt concluded at 10:50 [p.m.] at which time Officer Brent Kinney determined he
 
 *433
 
 was refusing the test by failing to follow his instructions and marked the refusal at that time.
 

 17.
 
 The petitioner's second attempt resulted in a detection of mouth alcohol. With that, Officer Brent Kinney had to reset the instrument, not to provide another opportunity for the petitioner to take the test, but to enter the refusal into the instrument.
 
 [emphasis added].
 

 18. In spite of the test ticket recording the refusal at 10:56 [p.m.], the DHHS 4081 indicates the refusal was actually at 10:50 [p.m.]
 

 19. The doctor's note indicates the petitioner's asthma appears to be stabilized with medication and anxiety disorder is managed by Xanax.
 

 The DMV Hearing Officer also made the following conclusions of law in its order:
 

 1. [Petitioner] was charged with an implied-consent offense.
 

 2. Officer Brent Kinney had reasonable grounds to believe that [Petitioner] had committed an implied-consent offense.
 

 3. The implied-consent offense charged involved no death or critical injury to another person.
 

 4. [Petitioner] was notified of his rights as required by N.C.G.S. 20-16.2(a).
 

 5. [Petitioner] willfully refused to submit to a chemical analysis.
 

 A.
 
 Evidence That Petitioner Was Charged With An Implied-Consent Offense
 

 Under the first requirement of
 
 N.C. Gen. Stat. § 20-16.2
 
 (d), testimony at the administrative hearing is sufficient evidence to show Petitioner was charged with an implied-consent offense. The DMV's Finding of Fact number 10, relevant to this conclusion of law, is supported by Officer Brent Kinney's testimony that he arrested Petitioner for driving while impaired. Additionally, Petitioner concedes in his petition seeking review of the DMV's revocation of his license that he was charged with the implied-consent offense of Impaired Driving under
 
 N.C. Gen. Stat. § 20-138.1
 
 . This conclusion of law is supported by the findings and is not in dispute.
 

 *434
 
 B.
 
 Evidence That A Law Enforcement Officer Had Reasonable Grounds To Believe Petitioner Had Committed An Implied-Consent Offense
 

 "[R]easonable grounds in a civil revocation hearing means probable cause, and is to be determined based on the same criteria."
 
 Steinkrause
 
 ,
 
 201 N.C.App. at 293
 
 ,
 
 689 S.E.2d at 381
 
 . "[P]robable cause requires only a probability or substantial chance of
 
 *783
 
 criminal activity, not an actual showing of such activity."
 
 Id.
 
 at 293,
 
 689 S.E.2d at 381-82
 
 (alteration in original). "A determination of probable cause depends on the totality of the circumstances."
 
 Id.
 
 at 293,
 
 689 S.E.2d at 381
 
 .
 

 Concerning the second requirement, Respondent identifies the DMV Hearing Officer's Findings of Facts 1 through 9 as supporting the conclusion that Officer Kinney had reasonable grounds to believe Petitioner had committed an implied-consent offense. Officer Kinney indicated in his testimony: (1) Petitioner appeared to be impaired based on his gait, glassy eyes, and dazed look; (2) Officer Kinney observed Petitioner operating his vehicle while in the shopping center parking lot (3) Petitioner admitted to Officer Kinney that he had driven his car in the shopping center parking lot; (4) Petitioner had slurred speech; (5) After Officer Kinney had pulled over the vehicle Petitioner was in, Petitioner disregarded Officer Kinney's instructions to not put candy in his mouth; (6) Petitioner "had a very strong odor of alcohol on him[;]" and (7) Petitioner failed two field sobriety tests.
 

 Officer Kinney's testimony is competent evidence, which supports the DMV's Findings of Fact 1, 7, 8, and 9. These Findings of Fact support the DMV's conclusion that a law enforcement officer had reasonable grounds to believe Petitioner had committed an implied-consent offense.
 
 See
 

 Atkins v. Moye
 
 ,
 
 277 N.C. 179
 
 , 185,
 
 176 S.E.2d 789
 
 , 794 (1970) (finding that the "[f]act that a motorist ha[d] been drinking, when considered in connection with faulty driving ... or other conduct indicating an impairment of physical or mental faculties, is sufficient prima facie [evidence] to show a violation of [the driving while impaired statute].") (quotations and citations omitted).
 

 C.
 
 The Affidavit Contains No Allegation That The Implied-Consent Offense Charged Involved Death Or Critical Injury To Another Person
 

 The third requirement of
 
 N.C. Gen. Stat. § 20-16.2
 
 (d) is inapplicable to the present case. No death or critical injury to another person was alleged in the affidavit. Neither party contends subsection (3) is at issue.
 

 *435
 
 D.
 
 Evidence That Petitioner Was Notified Of His Rights
 

 As to the fourth requirement, Respondent asserts Officer Kinney's testimony shows he read Petitioner his implied-consent rights, and supplied Petitioner with a copy of his implied-consent rights. Petitioner refused to sign the implied-consent rights form or indicate he wanted to call an attorney or witness. This testimony supports the DMV hearing officer's Finding of Fact number 11. Finding of Fact number 11 supports the hearing officer's conclusion of law that Petitioner was notified of his rights as required by
 
 N.C. Gen. Stat. § 20-16.2
 
 (a).
 

 E.
 
 Evidence That Petitioner Willfully Refused To Submit To A Chemical Analysis
 

 As to the fifth requirement, Respondent asserts testimony presented at the DMV hearing shows Petitioner willfully refused to submit to a chemical analysis. Officer Kinney testified that: (1) he instructed Petitioner on how to provide a valid sample of breath for testing; (2) Petitioner failed to follow the officer's instructions on the first Intoximeter test, as the pressure gauge on the instrument did not indicate that air was being breathed by Petitioner; (3) Officer Kinney provided Petitioner a second opportunity to provide an air sample; and (4) contrary to Officer Kinney's instructions, Petitioner finished blowing before being told to stop and then followed up with another puff of air.
 

 Petitioner urges us to affirm the superior court's decision and asserts the admitted evidence in the record shows: (1) the results of Petitioner's second Intoximeter test registered "mouth alcohol;" (2) the operating manual and procedures for the EC/IR II Intoximeter requires that if the machine detects "mouth alcohol," then a subsequent test should be administered after a 15-minute observation period; (3) Petitioner testified that he blew as long and hard as he could into the Intoximeter; (4) Petitioner testified he told the arresting officer before being administered the Intoximeter that he suffered from asthma.
 

 *784
 
 In
 
 Steinkrause v. Tatum
 
 , this Court concluded that where the petitioner breathed quick, short bursts of air into the breathalyzer, contrary to the chemical analyst's instructions to provide an adequate continuous breath sample, the evidence was sufficient to support a finding and conclusion that the petitioner willfully refused to submit to chemical analysis.
 
 Steinkrause
 
 ,
 
 201 N.C.App. at 296-97
 
 ,
 
 689 S.E.2d at 383-84
 
 . In
 
 Steinkrause
 
 , the petitioner complained to the arresting officer that injuries she suffered had diminished her ability to provide an adequate breath sample.
 

 Id.
 

 *436
 
 The arresting officer testified that the petitioner looked physically capable of providing an adequate sample of breath.
 

 Id.
 

 Relying on
 
 Tedder v. Hodges
 
 , the Court held that evidence of a petitioner's failure to follow the instructions of an intoxilyzer operator provides an adequate basis for a superior court to conclude that the petitioner willfully refused chemical analysis.
 
 Id.
 
 at 298,
 
 689 S.E.2d at
 
 385 (citing
 
 Tedder v. Hodges
 
 ,
 
 119 N.C.App. 169
 
 , 175,
 
 457 S.E.2d 881
 
 , 885 (1995) ). Respondent argues, citing
 
 Steinkrause
 
 and
 
 Tedder
 
 , the arresting officer's testimony that Petitioner did not follow instructions provided an adequate basis for the DMV Hearing Officer's findings of fact to support the conclusion Petitioner had willfully refused to submit to chemical analysis.
 

 The facts in both
 
 Steinkrause
 
 and
 
 Tedder
 
 are factually distinguishable from the instant case. In
 
 Steinkrause
 
 and
 
 Tedder
 
 , "petitioners agreed to submit to a test of their breath and failed to maintain sufficient pressure to provide a valid sample."
 
 Id.
 
 at 299,
 
 689 S.E.2d at 385
 
 (summarizing
 
 Tedder v. Hodges
 
 ,
 
 119 N.C.App. 169
 
 ,
 
 457 S.E.2d 881
 
 ). In neither case did the intoxilyzer machine register "mouth alcohol" nor sufficient samples when the petitioners purported to blow.
 

 Here, the findings of fact show and it is undisputed that when Petitioner blew a second time, the Intoximeter registered "mouth alcohol" as the result of the sample. The arresting officer asserted Petitioner failed to follow instructions by blowing insufficiently into the machine and he marked it as a willful refusal. Rather than indicating Petitioner blew insufficiently to provide a sample on his second attempt, Petitioner provided an adequate sample for the Intoximeter to read and register "mouth alcohol". The arresting officer's testimony that Petitioner blew insufficiently is directly contradicted by the Intoximeter's registering a sample with a "mouth alcohol" test result.
 

 Respondent did not produce any evidence to demonstrate the EC/IR II Intoximeter will produce a "mouth alcohol" reading if the test subject fails to submit a sufficient sample. The undisputed evidence shows the EC/IR II Intoximeter registered "mouth alcohol" and did not indicate an inadequate sample or refusal from Petitioner's failure to blow sufficiently.
 

 Officer Kinney's testimony asserting Petitioner willfully refused is contradicted by the machine's acceptance of Petitioner's sample. The indicated procedure to follow from this result of "mouth alcohol" is for a subsequent EC/IR II Intoximeter test to be administered after a 15-minute observation period elapses. This procedure was not followed here. The DMV Hearing Officer's conclusion that "[Petitioner] willfully
 
 *437
 
 refused to submit to a chemical analysis" is not supported by the record evidence or the findings.
 

 V. Conclusion
 

 Respondent has not shown the record evidence supports the conclusion, "[t]he person willfully refused to submit to a chemical analysis," set forth in
 
 N.C. Gen. Stat. § 20-16.2
 
 (d) for civil revocation of Petitioner's driver's license. The superior court's order reversing the DMV's civil revocation of Petitioner's license is affirmed.
 
 It is so ordered.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge STROUD concur.